Nos. 22-1622(L), 22-1845

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DEWBERRY ENGINEERS INC.,

*Plaintiff-Appellee,*

*v.*

DEWBERRY GROUP, INC., N/K/A DEWBERRY CAPITAL CORP.,

*Defendant-Appellant,*

On Appeal From The United States District Court
For The Eastern District Of Virginia
No. 1:20-cv-610 (Hon. Liam O'Grady)

## SUPPLEMENTAL OPENING BRIEF OF
## DEFENDANT-APPELLANT DEWBERRY GROUP, INC.

Patrick J. Fuster
Matt Aidan Getz
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7000

Jonathan C. Bond
  *Counsel of Record*
Thomas G. Hungar
M. Christian Talley
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500
JBond@gibsondunn.com

*Counsel for Defendant-Appellant Dewberry Group, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................... 1

BACKGROUND ..................................................................... 2

ARGUMENT .......................................................................... 9

    I.    The Profits-Disgorgement Order Should Be Reversed ......... 10

        A.    The Supreme Court's Decision Definitively Rejects The Only Justifications For The Profits-Disgorgement Award That DEI Preserved .................. 10

        B.    DEI Forfeited Any Other Basis For Disgorgement .............................................................. 12

    II.    The Attorneys' Fees Award Should Be Vacated And Remanded For Redetermination By The District Court .............................................................................. 23

CONCLUSION ..................................................................... 26

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chafin* v. *Chafin*,
    568 U.S. 165 (2013) ................................................................ 24

*Commissioner* v. *Banks*,
    543 U.S. 426 (2005) ................................................................ 16

*Commissioner* v. *Bollinger*,
    485 U.S. 340 (1988) ................................................................ 17

*Dewberry Engineers Inc.* v. *Dewberry Group, Inc.*,
    77 F.4th 265 (4th Cir. 2023) ................................. 1, 3, 6, 7, 21

*Dewberry Group, Inc.* v. *Dewberry Engineers Inc.*,
    145 S. Ct. 681 (2025) .................................... 1, 7, 8, 9, 11, 12

*Edd Potter Coal Co.* v. *Director*,
    39 F.4th 202 (4th Cir. 2022) ................................................. 14

*Fawcett* v. *McRoberts*,
    326 F.3d 491 (4th Cir. 2000) ................................................. 24

*Fidelity & Casualty Co. of New York* v. *Jackson*,
    297 F.2d 230 (4th Cir. 1961) ................................................. 14

*Grayson O Co.* v. *Agadir International LLC*,
    856 F.3d 307 (4th Cir. 2017) .................................... 12, 18, 23

*Hayes* v. *North State Law Enforcement Officers Association*,
    10 F.3d 207 (4th Cir. 1993) .............................................. 14, 19

*Hensley* v. *Eckerhart*,
    461 U.S. 424 (1983) ................................................................ 25

*Long* v. *Coast Resorts, Inc.*,
    267 F.3d 918 (9th Cir. 2001) ................................................. 24

*Promega Corp.* v. *Life Technologies Corp.*,
    875 F.3d 651 (Fed. Cir. 2017) ............................................... 19

*RSBCO* v. *United States*,
    104 F.4th 551 (5th Cir. 2024) ............................................... 24

*Shinn* v. *Ramirez*,
    596 U.S. 366 (2022) ............................................................. 14

*Stokes* v. *Stirling*,
    64 F.4th 131 (4th Cir. 2023) ....................................... 13, 14, 15, 19, 20

*In re Under Seal*,
    749 F.3d 276 (4th Cir. 2014) ............................................... 13

*United States* v. *Pileggi*,
    703 F.3d 675 (4th Cir. 2013) ............................................... 23

*United States* v. *Robinson*,
    744 F.3d 293 (4th Cir. 2014) ............................................... 20, 23

*Wells* v. *Fuentes*,
    126 F.4th 882 (4th Cir. 2025) ............................................. 17

**Statutes**

Lanham Act, 15 U.S.C. § 1051 *et seq.* ....................................... 1

15 U.S.C. § 1117(a) ....................................................... 1, 4, 6, 7

**Rules**

Sup. Ct. R. 15.2 ........................................................... 21

**Other Authorities**

Charles Alan Wright & Arthur R. Miller,
    *Federal Practice & Procedure* (2d ed. Apr. 2025 update) ............. 24, 25

iii

## INTRODUCTION

In this trademark-infringement action, Dewberry Engineers Inc. (DEI) sought and obtained a $43 million profits-disgorgement award against the only named defendant, Dewberry Group. That award, however, represented profits earned *not* by Dewberry Group but by its legally distinct, non-party corporate affiliates. DEI persuaded the district court to disregard such corporate formalities and "trea[t] Dewberry Group and its affiliates as a single corporate entity." 77 F.4th 265, 276 (4th Cir. 2023). This Court affirmed in a divided decision.

The Supreme Court unanimously disagreed. It held that "the 'defendant's profits'" that may be disgorged under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, "are the *defendant's* profits, not its plus its affiliates'." 145 S. Ct. 681, 687 (2025) (quoting 15 U.S.C. § 1117(a)). The Court also rejected DEI's fallback theory that other language in Section 1117(a), authorizing the award of an amount a court deems "just," could support the $43 million disgorgement award. *Id.* at 687-688.

The case returns to this Court with the only arguments for obtaining disgorgement that DEI actually preserved now definitively rejected. Although DEI tried in its Supreme Court merits brief to inject wholly

1

new theories, such belated backfilling is foreclosed by basic forfeiture principles. All of DEI's new arguments are off-limits under this Court's precedent, and respect for forfeiture rules requires ruling them out of bounds.

Little, accordingly, is now left for this Court to decide. Because no valid legal basis exists for the disgorgement award, it must be reversed. In addition, because the district court awarded attorneys' fees based largely on DEI's success in securing the now-untenable disgorgement award, the attorneys' fees award must be vacated as well and fees redetermined.

## BACKGROUND

**1.** John Dewberry is a real-estate developer. For more than 30 years, his namesake company (now named Dewberry Capital, but called Dewberry Group at the relevant time and for simplicity here) has developed and managed commercial properties under the Dewberry name. JA293-295.

Dewberry Group does not own or lease commercial properties. JA4250. Instead, it provides separately incorporated affiliated operating companies with accounting, human resources, legal, and real-estate-

development services for a fee. JA4250-4251. The affiliates own and lease commercial property to tenants in Florida, Georgia, South Carolina, and (formerly) Virginia, and receive all revenues from the leases. JA4251-4252, JA4278-4279. Although Dewberry Group and the affiliates are under Mr. Dewberry's common ownership, the entities file separate tax returns, and Dewberry Group maintains separate bank accounts and accounting records for each affiliate. JA4250-4252.

2. DEI provides architectural and engineering services, primarily to government entities. JA915-918, JA934-941, JA997. After DEI and Dewberry Group's predecessors became embroiled in a trademark dispute in 2006, they entered into a settlement agreement that permitted DEI to use its registered "Dewberry" mark, allowed Dewberry Group to use "Dewberry" (with specified limits) for commercial real-estate services, and required Dewberry Group to use "DCC" instead of "Dewberry" for certain services in Virginia. See 77 F.4th 265, 273-274 (4th Cir. 2023).

Dewberry Group later began producing materials using "Dewberry Group" and similar marks that its affiliates used to market commercial properties. 77 F.4th at 274-275. DEI sued Dewberry Group in 2020, claiming trademark infringement under the Lanham Act. JA34-68.

Dewberry Group was the *only* defendant named. JA36. The district court granted summary judgment in DEI's favor on liability and issued a permanent injunction. JA4086-4105, JA4151-4162.

**3.** The case proceeded to a three-day trial on monetary relief. JA4367. DEI sought only an order to disgorge "defendant's profits," not to recover "any damages sustained" by DEI. 15 U.S.C. § 1117(a); see JA4379. But Dewberry Group—the sole defendant—presented evidence showing that it had suffered losses each year in question. JA4282, JA6462.

DEI attempted a workaround. Its expert, Rodney Bosco, opined that, given the common ownership and "interdependence" of Dewberry Group and its legally distinct affiliates, they should be treated as the "same commercial enterprise." JA6582-6587. Instead of assessing only the finances of Dewberry Group itself, Bosco simply treated the profits of the affiliates as the "net enrichment to Dewberry Group." JA6609. Invoking Bosco's report and a "unified economic enterprise" theory, DEI urged the district court to order Dewberry Group to disgorge all of its *affiliates'* profits. D. Ct. Doc. 242, at 30. DEI argued that, under its "collective enterprise" theory, it was "of no moment" that it had neither

4

named the affiliates as defendants nor sought to pierce the corporate veil separating the affiliates from Dewberry Group. *Id.* at 26, 42.

The district court accepted DEI's invitation to treat Dewberry Group and its legally separate affiliates "as a single corporate entity when calculating the revenues and profits." JA4387. The court also agreed that it could order Dewberry Group to disgorge profits realized only by its affiliates without a showing of "alter-ego liability" or any other basis to pierce the corporate veil. JA4387-4388. The court credited Bosco's calculation of the affiliates' profits in an amount of $53,719,657, but it applied a 20% reduction to reflect that (i) some leases predated the asserted infringement and (ii) at least one use of a Dewberry-related mark was non-infringing, yielding the final disgorgement award of $42,975,725.60. JA4388-4392, JA4395.

The district court also awarded DEI $3,762,088.25 in attorneys' fees and $153,592.09 in costs. JA4432. The court calculated the lodestar amount and awarded that sum to DEI in full, relying heavily on DEI's success in obtaining the nearly $43 million profits-disgorgement award. JA4422-4429. Dewberry Group appealed from both the disgorgement

and attorneys' fees orders, D. Ct. Docs. 297, 313, and this Court consolidated the appeals, Doc. 18.

**4.** On appeal, DEI defended the disgorgement award based on the same single-corporate-entity theory it had successfully argued below. DEI contended that the Lanham Act imbues district courts with "broad discretion" to ignore corporate formalities in ordering disgorgement for trademark infringement, expressly disclaiming any need "to 'pierce the corporate veil.'" Doc. 49, at 53, 56 (DEI CA4 Br.) (citations omitted). DEI invoked (*id.* at 53) the provision authorizing a court, if it "find[s] that the amount of the recovery based on profits is either inadequate or excessive," to "enter judgment for such sum as the court shall find to be just, according to the circumstances," as support for disregarding corporate boundaries. 15 U.S.C. § 1117(a).

This Court affirmed in a divided decision. 77 F.4th at 289-293. The majority held that, although Dewberry Group itself had not received any profits, the district court properly "treated Dewberry Group and its affiliates as a single corporate entity for the purpose of calculating revenues and profits generated by Dewberry Group's use of infringing marks." *Id.* at 290. The majority agreed with DEI that district courts' "discretion"

6

under the Lanham Act enables them to dispense with corporate formalities and order disgorgement of profits realized only by affiliates without "piercing their corporate veils." *Id.* at 292-293. Judge Quattlebaum dissented as to disgorgement, reasoning that courts cannot "simply add the revenues from non-parties to a defendant's revenues" absent veil-piercing. *Id.* at 300.

**5.** The Supreme Court unanimously vacated this Court's judgment. 145 S. Ct. 681, 688 (2025). The Court held that the Lanham Act provision "authorizing a profits award for trademark infringement offers no support for the approach" underlying the disgorgement award here. *Id.* at 686. The Act's text, the Court explained, permits disgorging only the "*defendant's* profits," not profits realized by distinct, non-party affiliates. *Ibid.* (emphasis added) (quoting 15 U.S.C. § 1117(a)). And "background principles of corporate law," including the "'bedrock'" presumption of corporate separateness, forbid ordering disgorgement of non-party affiliates' profits absent a valid basis for piercing the corporate veil. *Ibid.* (citation omitted). Because DEI "admit[ted] that it never tried to make the showing needed for veil-piercing," the Court concluded, "the demand to respect corporate formalities remains." *Id.* at 687.

7

Indeed, DEI "concede[d]" in the Supreme Court "that a court has no authority to 'disregard corporate separateness' and order disgorgement of an affiliate's profits as the 'defendant's' own." 145 S. Ct. at 687 (quoting Resp. Br. 2, *Dewberry*, *supra* (No. 23-900) (DEI S. Ct. Br.)). Instead, DEI principally defended the disgorgement award as an exercise of the district court's authority to award a different "sum" it deems "just" if it finds the defendant's actual profits inadequate or excessive. *Ibid.*; see DEI S. Ct. Br. 21-33, 40-47. The Supreme Court squarely rejected that revisionist explanation as well. 145 S. Ct. at 687. That just-sum theory, it held, was "not a tenable take on why" DEI in fact "got a $43 million award." *Ibid.* And the district court "*could not* plausibly have concluded that" the just-sum provision authorized the award here—which treats all of the affiliates' profits as Dewberry Group's own—"given (at a minimum) that the affiliates owned the rent-producing properties." *Id*. at 687-688 (emphasis added). "By treating those entities as one and the same," the Court concluded, "the courts below approved an award including *non*-defendants' profits—and thus went further than the Lanham Act permits." *Id.* at 688.

8

The Supreme Court left "unaddressed" DEI's newly raised alternative arguments, including whether DEI "may press its just-sum theory on remand given forfeiture rules"; whether courts can "look behind a defendant's tax or accounting records" to identify its "'true financial gain'"; and whether "corporate veil-piercing is an available option on remand." 145 S. Ct. at 688.

## ARGUMENT

The Supreme Court's unanimous ruling leaves only two issues regarding remedies for this Court to resolve. The first is the fate of the $43 million disgorgement award entered by the district court. That award must be reversed because the Supreme Court definitively rejected the only legal bases that DEI timely advanced to justify it. The new theories DEI first put forward in its Supreme Court merits brief came far too late into this five-year-long litigation and are forfeited under settled Circuit precedent.

The second issue is what should become of the district court's attorneys' fees award. That award must be set aside because it was premised in substantial part on DEI's success in securing the now-untenable

disgorgement award.  This Court should vacate the attorneys' fees award and remand for the district court to reassess it.

## I.    The Profits-Disgorgement Order Should Be Reversed

The district court's disgorgement order cannot stand because the Supreme Court rejected the two legal bases that DEI preserved to defend it.  If DEI now seeks to pursue any new arguments it never previously presented to the district court or this Court, the Court should hold any such arguments foreclosed by basic principles of forfeiture.

### A.    The Supreme Court's Decision Definitively Rejects The Only Justifications For The Profits-Disgorgement Award That DEI Preserved

Until its Supreme Court merits brief, DEI sought disgorgement on just two grounds:  (1) a defendant and its legally separate, non-party affiliates may be treated as a single corporate entity (without any veil-piercing), such that an award of "the defendant's profits" in Section 1117(a) may include its affiliates' profits; and (2) the Lanham Act's just-sum provision gave the district court discretion to reach the same result by awarding an amount equal to those affiliates' profits.  DEI CA4 Br. 53-56. The Supreme Court unanimously rejected both.

*First*, the Supreme Court swiftly dispatched the contention—which DEI had all but abandoned—that an award of a "defendant's profits" in Section 1117(a) can include profits of legally separate, non-party corporate affiliates. 145 S. Ct. at 686-687. The Court held that the longstanding presumption of corporate separateness "fits hand-in-glove with the Lanham Act's text," which permits an order of disgorgement only of "the *defendant's* profits, not its plus its affiliates'." *Id.* at 687. Because the judgment here ignored those limits and "approved an award including *non*-defendants' profits," it violated the Act. *Id.* at 688.

*Second*, the Supreme Court also rejected what had by then become DEI's primary argument: that the Lanham Act's just-sum language independently supported the same award. 145 S. Ct. at 687. That language, the Court held, was not the basis for the award: "The District Court did not rely on the just-sum provision," and this Court's "decision bears no resemblance to [DEI's] description." *Id.* at 687-688. The district court had improperly awarded "the sum of all the [affiliates'] real-estate profits," based on "the idea that Dewberry Group and its affiliates should be regarded as one." *Id.* at 687. What is more, the Supreme Court held that the just-sum provision *could not* have supported the award in these

11

circumstances:  The district court "could not plausibly have concluded that *all*" of the affiliates' profits "were properly attributable to Dewberry Group, as reflecting the Group's own gain, given (at a minimum) that the affiliates owned the rent-producing properties." *Id.* at 687-688.

The Supreme Court's decision leaves no viable way for DEI to defend "the District Court's wholesale result." 145 S. Ct. at 688.  And whatever role the just-sum provision might play in other cases, "it cannot justify ignoring the distinction between a corporate defendant (*i.e.*, Dewberry Group) and its separately incorporated affiliates." *Ibid.*  The disgorgement order here thus lacks any valid basis for affirmance.

## B.    DEI Forfeited Any Other Basis For Disgorgement

Apparently anticipating that the only two theories it had preserved might fare poorly, DEI asserted—for the first time in its merits briefing in the Supreme Court—several other theories to support the disgorgement award in part or in full.  But those new theories are off-limits under elementary rules of issue preservation.

1.    It is hornbook law that parties cannot inject new theories into a case at the thirteenth hour.  A party forfeits an argument by failing "to present" it at all or to "develop" it beyond "a passing shot."  *Grayson O*

12

*Co.* v. *Agadir International LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (citation omitted). And "appellees" (like DEI) receive no special treatment; they, too, can "waive arguments by failing to brief them." *Stokes* v. *Stirling*, 64 F.4th 131, 137 (4th Cir. 2023) (citation omitted). Thus, "[o]n multiple occasions, this Court has declined to address an argument that an appellee did not raise properly." *Ibid.* (collecting cases).

This Court's forfeiture principles are enforced rigorously, yielding only in "exceptional circumstances." *In re Under Seal*, 749 F.3d 276, 285 (4th Cir. 2014) (citation omitted). And for good reason. Forfeiture rules protect litigants from the "injustice" of being "'sandbagg[ed]'" on appeal with new arguments never raised below. *Stokes*, 64 F.4th at 140 (citation omitted). And they safeguard appellate courts' scarce "'judicial resources'" by ensuring that issues are first aired in the trial court, which can render a decision that assists the appellate court or may even obviate the need for an appeal. *Under Seal*, 749 F.3d at 286 (citation omitted). "Enforcing waiver and forfeiture rules against appellees" serves those values and "reflects the principle that [courts] 'apply these rules on a consistent basis' so that they 'provide a substantial measure of fairness and certainty to the litigants.'" *Stokes*, 64 F.4th at 137 (brackets and citation omitted).

13

The problems posed by unpreserved arguments are at their apex for fact-intensive issues not adequately litigated before the district court. When a party fails to raise such an argument at the appropriate time in the court below, the opposing party is deprived of the opportunity to develop the relevant facts, and an appellate court may lack an adequate record. In that circumstance, "it would be inappropriate to allow" the party seeking to raise the unpreserved issue "to try again" after losing on appeal on other grounds. *Hayes* v. *North State Law Enforcement Officers Association*, 10 F.3d 207, 215 (4th Cir. 1993); accord, *e.g.*, *Fidelity & Casualty Co. of New York* v. *Jackson*, 297 F.2d 230, 234-235 (4th Cir. 1961).

These principles apply with full force where, as here, a case returns to a court of appeals on remand from the Supreme Court. As this Court has recognized, "[t]he mere fact of a remand does not wipe the whole slate clean." *Edd Potter Coal Co.* v. *Director*, 39 F.4th 202, 210 (4th Cir. 2022). "On remand" as before, "parties may not raise whatever new issues they would like if they have previously failed" to raise them. *Ibid.*

This Court recently enforced that rule in *Stokes*. There, South Carolina persuaded the Supreme Court to vacate this Court's decision ordering habeas relief for further consideration in light of *Shinn* v. *Ramirez*,

14

596 U.S. 366 (2022), which had limited the use of evidentiary hearings in habeas proceedings. *Stokes*, 64 F.4th at 133. On remand, South Carolina then argued for the first time that the habeas petitioner could not rely on favorable facts from an evidentiary hearing. *Ibid.* But this Court rejected that argument as "forfeited," given South Carolina's failure "to raise it during earlier proceedings." *Ibid.*; see *id.* at 136-139. In short, the same forfeiture principles that ordinarily govern continue to control on remand.

**2.** Straightforward application of those forfeiture principles precludes DEI from attempting to defend the disgorgement award on any new grounds that it never previously presented to the district court or this Court over the past five years in multiple rounds of filings. Although DEI in passing invoked for the first time in its Supreme Court merits brief various new theories to support the award in full or in part, all of those theories are off-limits now because each was absent from DEI's prior submissions. None appeared in DEI's expert report on Dewberry Group's supposed profits, its factual submissions to the district court during the three-day trial on disgorgement, its subsequent briefing to the district court, or its briefing to this Court. Nor did DEI even advance

them in its certiorari-stage briefing in the Supreme Court as a putative
reason to withhold review. And several of DEI's new contentions contra-
dict what it previously argued. All of them are out of time and out of
bounds.

***Imaginary Assignment.*** DEI briefly suggested that the disgorge-
ment order here can be sustained on an "assignment" theory: that Dew-
berry Group had effectively "assigned revenues and profits to its affili-
ates" and so is fairly treated as receiving them. DEI S. Ct. Br. 13; see *id.*
at 42-43. DEI ostensibly borrowed that idea from an amicus brief filed
by the United States, which discussed a loose analogy to the tax-law doc-
trine of anticipatory assignment. U.S. Amicus Br. 20-21, *Dewberry*, *su-
pra* (No. 23-900). That doctrine applies when calculating income tax for
a taxpayer who has the legal right to receive income but assigns it to a
third party before receipt. See *Commissioner* v. *Banks*, 543 U.S. 426,
433-434 (2005).

But DEI argued nothing like that "assignment" theory until its mer-
its briefing in the Supreme Court. Notions of "assignment" appear no-
where in DEI's proposed findings in the district court, in DEI's brief on
appeal, or at the certiorari stage. And DEI neither identified an agreement

to assign profits nor contended that Dewberry Group (rather than its affiliates) had the legal right to receive the properties' revenues. Such a contention would have contravened the ordinary rule that property owners (here, the affiliates), not their service providers (like Dewberry Group), own rents that properties generate. See *Commissioner* v. *Bollinger*, 485 U.S. 340, 344 (1988).

Even in the Supreme Court, the only mechanism DEI proposed to show an "assignment" of profits to the affiliates was Dewberry Group's charging of purportedly below-market service fees. DEI S. Ct. Br. 43. But DEI never introduced any evidence purporting to establish the market value of those services. It is "too late for [DEI] to make this argument now." *Wells* v. *Fuentes*, 126 F.4th 882, 893 n.10 (4th Cir. 2025).

***Pretended Partnership.*** DEI also asserted—in a single sentence—that the disgorgement award could be sustained by treating Dewberry Group and its affiliates as if they were partners "'engaged in concerted wrongdoing.'" DEI S. Ct. Br. 52 (citation omitted). But again, DEI never previously made any such argument in this litigation, let alone adduced evidence that DEI and its affiliates formed a partnership. And its cursory invocation of that doctrine in the Supreme Court did not attempt to ex-

plain how principles applicable to partners—who enjoy no presumption of separateness—could govern separate *corporations*, which do. Even if DEI had previously made the same undeveloped assertion in this Court, that paradigmatic "passing shot" would not have preserved it for appeal. *Grayson O Co.*, 856 F.3d at 317 (citation omitted).

***Some Other Just Sum.*** Although DEI's principal submission in the Supreme Court was that the Lanham Act's just-sum provision authorized the full $43 million disgorgement award, DEI briefly posited that the just-sum provision might permit some other, smaller award. DEI S. Ct. Br. 51. But DEI never specified what that other amount would be or how it should be determined—only that the district court could recalculate Dewberry Group's "true financial gain" based on purported "kickback payments," "the real market value of [its] services" to the affiliates, or "other" (unidentified) "relevant facts." *Ibid.* Although superficially similar to DEI's just-sum argument supporting the $43 million award— which DEI preserved but the Supreme Court rejected, see pp. 11-12, *supra*—this distinct *other*-just-sum argument is forfeited.

DEI nowhere contended until its Supreme Court merits brief that the just-sum provision could support any more limited disgorgement

award.  Nor did it substantiate any basis on which that amount would be determined.  Instead, at every turn, DEI steadfastly argued that *all* the affiliates' profits should simply be imputed to Dewberry Group under the just-sum provision on the theory that Dewberry Group and its affiliates constitute one enterprise.  It pressed that singular, all-or-nothing theory in its key expert report, JA6582, JA6603, JA6609, in its proposed findings of fact, D. Ct. Doc. 242, at 24, in its brief on appeal, DEI CA4 Br. 53-54, 58, and at oral argument in this Court, Oral Arg. Recording 36:01-36:38.

Nor did DEI ever develop any factual record to support a contention that some lesser amount should be awarded as a "just" sum, depriving this Court and the district court of any basis even to evaluate such a claim. DEI bet everything on a maximalist award, "choosing not to raise" any other, factually undeveloped theories until it got cold feet in the Supreme Court.  *Stokes*, 64 F.4th at 133; see, *e.g.*, *Promega Corp.* v. *Life Technologies Corp.*, 875 F.3d 651, 666 (Fed. Cir. 2017) (applying forfeiture when plaintiff "abandon[ed] valid theories of recovery in a singular pursuit of an ultimately invalid damages theory").  It would be "inappropriate" to allow DEI "to try again" after losing its now-regretted wager.  *Hayes*, 10 F.3d at 215.

***Determining Profits But Ignoring Losses.*** In a puzzling turn, DEI debuted in its Supreme Court merits brief an argument that it could at least "recover the revenues in [Dewberry Group's] own books," which DEI says would show that "the 'defendant's profits' weren't zero" because Dewberry Group purportedly failed to prove costs to offset its revenues. DEI S. Ct. Br. 52. That argument is not merely forfeited but affirmatively "waived" because DEI previously and repeatedly argued the *opposite* and thus "intentional[ly] relinquish[ed]" its new position. *United States* v. *Robinson*, 744 F.3d 293, 298 (4th Cir. 2014) (citation omitted); see *Stokes*, 64 F.4th at 137 (litigants "abando[n] an issue by taking one position at one stage of an appeal and then asserting a contrary position at a later stage").

In the district court, in this Court, and when opposing review in the Supreme Court, DEI argued that Dewberry Group recorded *losses* during the infringement period and thus earned no profits. That premise was central to its attempt to impute the affiliates' profits to Dewberry Group. DEI's expert opined that Dewberry Group and its affiliates should be treated "as a single economic enterprise," JA6581, precisely because Dewberry Group continued to function while "incurr[ing] substantial

20

earnings losses" during the infringement period, JA6462.  Echoing Bosco, DEI asserted in its proposed findings that "Dewberry Group Inc. shows losses on its books."  D. Ct. Doc. 242, at 25.  DEI repeated that point on appeal.  DEI CA4 Br. 23 ("DG's financial statements * * * showed $0 in profits").  Both the district court and this Court accepted that Dewberry Group "generated zero profits."  77 F.4th at 290 (quoting JA4385).

DEI maintained that position even at the certiorari stage in the Supreme Court.  In seeking review, Dewberry Group explained that this case cleanly presented the question of disregarding corporate separateness because Dewberry Group itself "'generated zero profits,' which eliminate[d] any need to calculate or apportion profits attributable to infringement."  Pet. 35, *Dewberry*, *supra* (No. 23-900) (quoting 77 F.4th at 290).  It was incumbent on DEI to bring any qualms with the factual premises of the certiorari petition "to the Court's attention in the brief in opposition."  Sup. Ct. R. 15.2.  Far from disputing the zero-profits premise, DEI admitted that Dewberry Group's records "reflected" "$0 in profits" because its losses during the period led to "negative profits"—which supposedly provided "extraordinary" grounds to impute the affiliates' profits to Dewberry Group.  Br. in Opp. 3, 7, *Dewberry*, *supra* (No. 23-900).  DEI

21

later had buyer's remorse and asserted the opposite in passing, DEI S. Ct. Br. 49-50, 52, but it should not be heard to contradict its prior position now.

**Veil-Piercing, After All.** Finally, and without any apparent sense of irony, DEI suggested in the Supreme Court that it could "overcome corporate separateness" to claim the full disgorgement award. DEI S. Ct. Br. 52. Its tardy resort to veil-piercing also is not merely forfeited but affirmatively waived.

DEI repeatedly disclaimed any veil-piercing argument. When Dewberry Group argued that "'the corporate veil'" prevented disgorgement of its affiliates' profits, DEI persuaded the district court, in light of "Bosco's analysis," that its failure to pierce the corporate veil was "of no moment." JA4384, JA4386-4387 (citation omitted). DEI again contended on appeal that "no 'veil piercing' was needed" and that the $43 million award "did not require" the district court to "'pierce the corporate veil.'" DEI CA4 Br. 25, 56. And at oral argument, DEI's counsel further asserted "there is no veil piercing that's required." Oral Arg. Recording 37:08-37:12. DEI tried to backtrack in the Supreme Court, arguing that it had disavowed merely "the *need*"—not the ability—to pierce the corporate veil. DEI

S. Ct. Br. 52 n.1.  But that wordplay is sophistry.  A party that disclaims any need to make, and then does not make, an argument has "intentional[ly] relinquish[ed]" it.  *Robinson*, 744 F.3d at 298 (citation omitted).

In any event, DEI undoubtedly "fail[ed] to develop [any] argument" for piercing the veil, so such a tactic is now at minimum forfeited.  *Grayson O Co.*, 856 F.3d at 316 (citation and internal quotation marks omitted).  DEI was on notice about the corporate-separateness barrier and "could just as well have raised" veil-piercing arguments long before.  *United States* v. *Pileggi*, 703 F.3d 675, 680 (4th Cir. 2013) (citation omitted).  Yet as the district court recognized, DEI chose not to raise them.  JA4387.

*****

DEI's original disgorgement theories have been rejected.  And each new theory it has floated is forfeited or waived.  The award should be reversed in its entirety.

## II.  The Attorneys' Fees Award Should Be Vacated And Remanded For Redetermination By The District Court

Setting aside the disgorgement award also requires revisiting the district court's award of $3.8 million in attorneys' fees to DEI.  That fee award relied heavily on DEI's success in procuring the $43 million dis-

23

gorgement award. Because the disgorgement award can no longer stand in light of the Supreme Court's decision, the foundation of the fees award has been upended. The district court accordingly should determine on remand what fee award is now appropriate.

When a court of appeals reverses or vacates part or all of a judgment on the merits, an award of attorneys' fees based on that judgment must be vacated and the fees determination reconsidered. "The decision of the appeal on the merits may undo the assumptions on which the fee award was made," so "a proper appeal from the final award may be remanded for further proceedings without considering the issues raised by the award." 15B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3915.6 (2d ed. Apr. 2025 update) (Wright & Miller). The Supreme Court and this Court alike have recognized that "vacatur of the [fees] award" "in conjunction with reversal of the judgment" is "common relief on appeal." *Chafin* v. *Chafin*, 568 U.S. 165, 177 (2013) (citing *Fawcett* v. *McRoberts*, 326 F.3d 491, 501 n.6 (4th Cir. 2000)); see also, *e.g.*, *RSBCO* v. *United States*, 104 F.4th 551, 562 (5th Cir. 2024); *Long* v. *Coast Resorts, Inc.*, 267 F.3d 918, 925 (9th Cir. 2001).

That commonplace procedure is appropriate here because the invalidity of the profits-disgorgement award "undo[es]" a major "assumptio[n] on which the fee award was made." 15B Wright & Miller § 3915.6. The "*degree* of success obtained" is "the most critical factor" in assessing fees. *Hensley* v. *Eckerhart*, 461 U.S. 424, 436 (1983) (emphasis added). And it is "particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Id.* at 434.

That is now the case here. In seeking fees, DEI proclaimed itself "completely victorious" after emerging from the "three-day bench trial" with "nearly $43 million in disgorged profits" and sought "100% of the lodestar calculation" based on that award. D. Ct. Doc. 277, at 1, 24. And in awarding fees, the district court agreed that DEI's "claims were entirely successful," including its pursuit of "monetary relief," and that DEI's counsel "'obtained excellent results'" because DEI "was awarded more than $42 million in damages." JA4428-4429 (citation omitted). But those claims of complete success are not true after the Supreme Court's decision, which eliminated the only bases DEI preserved for the only monetary relief it sought and obtained. Because the degree of success

that was central to the fee award has shifted so markedly, the award must be vacated and redetermined by the district court on remand.

## CONCLUSION

The Court should reverse the disgorgement order, vacate the award of attorneys' fees, and remand for the district court to recalculate a reasonable fees award.

Dated:  May 19, 2025                    Respectfully submitted.

                                                  */s/ Jonathan C. Bond*

Patrick J. Fuster                    Jonathan C. Bond
Matt Aidan Getz                       *Counsel of Record*
GIBSON, DUNN & CRUTCHER LLP     Thomas G. Hungar
333 South Grand Avenue          M. Christian Talley
Los Angeles, CA  90071          GIBSON, DUNN & CRUTCHER LLP
(213) 229-7000                       1700 M Street, N.W.
                                             Washington, D.C.  20036
                                             (202) 955-8500
                                             JBond@gibsondunn.com

*Counsel for Defendant-Appellant Dewberry Group, Inc.*

## CERTIFICATE OF COMPLIANCE

This supplemental opening brief complies with the word limit set by order of this Court, Doc. 80, as it contains 4,972 words, excluding the portions exempted by Rule 32(f) of the Federal Rules of Appellate Procedure.

The supplemental opening brief also complies with the typeface requirements of Rule 32(a)(5)(A) and the type-style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in 14-point, New Century Schoolbook font.

Dated: May 19, 2025                    GIBSON, DUNN & CRUTCHER LLP

                                       By: _____/s/ Jonathan C. Bond_____

                                       *Counsel for Defendant-Appellant*
                                       *Dewberry Group, Inc.*

## CERTIFICATE OF SERVICE

I certify that on May 19, 2025, I electronically filed the foregoing opening brief with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system, which will send a notification of such filing to all counsel of record.

Dated: May 19, 2025                GIBSON, DUNN & CRUTCHER LLP

By: ____*/s/ Jonathan C. Bond*_____

*Counsel for Defendant-Appellant*
*Dewberry Group, Inc.*