**Nos. 22-1622, 22-1845**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

---

**DEWBERRY ENGINEERS INC.,**
**Plaintiff-Appellee,**

**v.**

**DEWBERRY GROUP, INC. n/k/a Dewberry Capital Corp.,**
**Defendant-Appellant.**

---

**DEWBERRY ENGINEERS INC.'S SUPPLEMENTAL RESPONSE BRIEF**

---

Noel J. Francisco
Jennifer L. Swize
Brett J. Wierenga
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113
202-879-3939
*njfrancisco@jonesday.com*
*jswize@jonesday.com*
*bwierenga@jonesday.com*

Elbert Lin
Stephen P. Demm
David M. Parker
David N. Goldman
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074
804-788-8200
*elin@hunton.com*
*sdemm@hunton.com*
*dparker@hunton.com*
*dgoldman@hunton.com*

Arthur E. Schmalz
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Ave. NW,
Washington, DC 20037
202-955-1500
*aschmalz@hunton.com*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ....................................................................................1

BACKGROUND .....................................................................................3

   I.     Factual Background.......................................................................3

   II.    Procedural History.......................................................................4

      A.  The district court rules in Dewberry's favor. ...............................4

      B.  This Court affirms in *Dewberry I*. ............................................7

      C.  The Supreme Court grants certiorari on the sole issue presented to it—the quantum of Dewberry's disgorgement award—and in *Dewberry II* remands on that sole issue for "a new award proceeding"............................8

ARGUMENT ...........................................................................................11

   I.     This Court should reinstate its prior rulings on liability, the injunction, attorney's fees, and Dewberry's entitlement to disgorgement. .........11

      A.  The mandate rule protects all rulings not raised before the Supreme Court and not addressed in its remand order. ...................................11

      B.  This Court should reinstate all aspects of *Dewberry I* except for its affirmance of the district court's "treat[ment of] Dewberry Group and its affiliates as a single corporate entity in calculating the 'defendant's profits.'" ..........................................................14

   II.    The only remaining issue is the appropriate amount of Dewberry's disgorgement award............................................................15

   III.   The district court should hold the "new award proceeding" and decide the remaining issue in the first instance.....................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aldridge v. Baltimore & Ohio R. Co.*,
　866 F.2d 111 (4th Cir. 1989) (en banc) ............................................................13

*Bondi v. VanDerStok*,
　145 S. Ct. 857 (2025) ........................................................................................12

*Dewberry Eng'rs Inc. v. Dewberry Grp., Inc.*,
　77 F.4th 265 (4th Cir. 2023) .......................................................................*passim*

*Dewberry Grp., Inc. v. Dewberry Eng'rs Inc.*,
　145 S. Ct. 681 (2025) ...................................................................................*passim*

*Doe v. Chao*,
　511 F.3d 461 (4th Cir. 2007) .....................................................................13, 15

*Entek GRB, LLC v. Stull Ranches, LLC*,
　840 F.3d 1239 (10th Cir. 2016) .................................................................12, 13

*Glover v. United States*,
　531 U.S. 198 (2001) ..........................................................................................14

*Hannah P. v. Haines*,
　80 F.4th 236 (4th Cir. 2023) ............................................................................12

*Hyatt v. Heckler*,
　807 F.2d 376 (4th Cir. 1986) .............................................................13, 14, 15

*Invention Submission Corp. v. Dudas*,
　413 F.3d 411 (4th Cir. 2005) ...........................................................................12

*Kotler v. Am. Tobacco Co.*,
　981 F.2d 7 (1st Cir. 1992) .................................................................................13

*Liu v. SEC*,
　591 U.S. 71 (2020) ............................................................................................17

*In re Marriott Int'l, Inc.*,
   78 F.4th 677 (4th Cir. 2023) ...............................................................18

*Miller v. Beshears*,
   215 F.3d 1320, 2000 WL 699668 (4th Cir. May 19, 2000) (per
   curiam) ...................................................................................................18

*Pearson v. Edgar*,
   153 F.3d 397 (7th Cir. 1998) ........................................................13, 14

*Shell Oil Co. v. Commercial Petro., Inc.*,
   928 F.2d 104 (4th Cir. 1991) ...............................................................18

*Sibbald v. United States*,
   37 U.S. 488 (1838)................................................................................13

*Synergistic Int'l, LLC v. Korman*,
   470 F.3d 162 (4th Cir. 2006) ............................................................5, 6

*United States v. Aramony*,
   166 F.3d 655 (4th Cir. 1999) ........................................................13, 15

*United States v. Avila*,
   134 F.4th 244 (4th Cir. 2025) ..............................................................17

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
   401 U.S. 321 ........................................................................................19

**Statutes and Rules**

15 U.S.C. § 1114(1) .......................................................................................4

15 U.S.C. § 1117(a) ...........................................................................*passim*

S. Ct. R. 14.1(a)...........................................................................................14

**Other Authorities**

18B Wright, Miller, and Cooper, *Federal Practice & Procedure* § 4478
   (3d ed. 2019) .........................................................................12, 13, 15

## **INTRODUCTION**

This trademark infringement case returns from the Supreme Court for a "new award proceeding." *Dewberry Grp., Inc. v. Dewberry Eng'rs Inc.*, 145 S. Ct. 681, 684, 688 (2025) (*Dewberry II*). This Court previously affirmed a judgment that, among numerous other things, awarded approximately $43 million in disgorgement of profits. *Dewberry Eng'rs Inc. v. Dewberry Grp., Inc.*, 77 F.4th 265, 273 (4th Cir. 2023) (*Dewberry I*). Defendant Dewberry Group, Inc. ("DG") sought and obtained further review on the limited question whether that amount was calculated correctly. The Supreme Court took up that narrow issue, held "that the courts below were wrong to treat Dewberry Group and its affiliates as a single entity in calculating the 'defendant's profits,'" and "remand[ed] th[e] case for a new award proceeding." *Dewberry II*, 145 S. Ct. at 688.

Plaintiff Dewberry Engineers Inc. ("Dewberry") hereby responds to this Court's subsequent order for supplemental briefing on three questions:

    (1) what aspects of this Court's earlier decision should be reinstated;

    (2) what issues remain to be decided by the lower courts on remand; and

    (3) whether some or all of those remaining issues, if any, should be addressed in further proceedings by this Court or remanded to the district court for decision in the first instance.

This brief answers those questions in turn.

1

First, almost all of this Court's earlier decision should be reinstated.  The only issue that the Supreme Court was asked to decide, and the only issue that it did decide, was whether this Court erred in affirming the district court's calculation of the *amount* of Dewberry's disgorgement award.  The Supreme Court was not petitioned to review any other rulings of this Court, including the rulings that affirmed the district court on DG's liability for breach of contract and trademark infringement, the issuance of a permanent injunction, and the awarding and amount of attorney's fees and costs.  And the same goes for this Court's affirmance that Dewberry was *entitled* to disgorgement—which is separate and distinct from the question of the appropriate *amount*.  All of these rulings are now law of the case and, under the mandate rule, must be restored.

Second, and conversely, the only issue that has been reopened for decision is the appropriate amount of Dewberry's disgorgement award.  As the Supreme Court said, it was "remanding this case for a new award proceeding." *Id.*  That issue and proceeding includes the "number of questions" that the Supreme Court expressly left "unaddressed," such as whether and how Dewberry may rely on the "just-sum provision," pursue a theory of "true financial gain," or pierce the "corporate veil." *Id.*.

Third, the district court is best positioned to hold the "new award proceeding" and answer these questions in the first instance.  Accordingly, this Court should

remand for recalculation of Dewberry's disgorgement award after reinstating the rest of its earlier decision.

## **BACKGROUND**

As this Court is familiar with many of the facts and prior proceedings, only an abbreviated summary follows.

### I.    **Factual Background**

This case involves a nearly twenty-year clash between Dewberry and DG over the "Dewberry" mark. *Dewberry I*, 77 F.4th at 272–73. This dispute yielded two lawsuits.

In the first lawsuit (filed in 2006), Dewberry sued DG for trademark infringement. *Id.* at 272–73. Before and during that suit, DG admitted that its "Dewberry Capital" mark was likely to be confused with Dewberry's federally registered "Dewberry" mark. *Id.* But DG claimed it had superior trademark rights. *Id.* Ultimately, DG signed a confidential settlement agreement (the "CSA") effectively admitting that Dewberry, not DG, had superior rights. *Id.* at 274.

The settlement bought several years of peace. But DG then broke that peace by violating multiple provisions of the CSA and willfully infringing Dewberry's registered "Dewberry" marks. *Id.* at 274–75, 285–86. In doing so, DG ignored numerous "red flags" that should have prevented further infringement, including warnings from the United States Patent and Trademark Office, cease-and-desist

letters, and instances of actual confusion with Dewberry's marks. Dkt. 256 ("Trial Order") at 4–13.

Because of DG's breaches and infringement, Dewberry filed this second lawsuit in 2020, alleging breach of the CSA and trademark infringement under the Lanham Act. *Dewberry I*, 77 F.4th at 276; *see* 15 U.S.C. § 1114(1). Dewberry sought injunctive relief, damages, attorney's fees and costs, and any other appropriate relief. Dkt. 1 at 33–35.

## II. Procedural History

### A. The district court rules in Dewberry's favor.

In several separate orders and opinions, the district court granted Dewberry all of the relief it requested.

First, the district court granted summary judgment on the issue of DG's liability for breach of contract and trademark infringement. Dkt. 174. It held that DG had repeatedly violated four provisions in the CSA and willfully infringed Dewberry's marks. *Id.* at 4–10, 19. The district court set the case for a trial solely on the amount of monetary relief to be awarded for DG's willful infringement. Dkt. 175.

Second, the district court granted Dewberry's motion for entry of a permanent injunction. *See* Dkts. 208, 229. The district court found that DG's infringement had irreparably damaged Dewberry's "reputation and goodwill" (which Dewberry had

recently "spent $125 million" promoting), and that, "unless [DG] is permanently enjoined from doing so, it will continue to infringe the Dewberry Marks and violate the prohibitions of the CSA, resulting in continued irreparable harm to Dewberry." Dkt. 229 at 4, 7.[1]

Third, the district court held a three-day bench trial "limited to the . . . damages to be awarded to [Dewberry]." Trial Order at 1. The district court ultimately awarded Dewberry approximately $43 million in disgorgement of profits. *Id.* at 1, 29. In awarding the $43 million, the district court made two distinct rulings: one on Dewberry's entitlement to disgorgement, *id.* at 15–18, and the other on the appropriate amount of that award, *id.* at 18–27, 29.

On the threshold issue of entitlement, the district court held that the *Synergistic* factors weighed conclusively in Dewberry's favor. *Id.* at 15–18 (applying *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006)). Specifically, it found that (1) DG's infringement was "intentional, . . . willful and in bad faith," in part because DG had ignored the multiple "red flags," Trial Order at 15; (2) DG's infringement caused Dewberry to lose sales as the "parties operate in overlapping markets" and "market to the same kinds of parties," *id.* at 15–16

---

[1] The district court granted the injunction motion prior to trial, and stated that it would enter an order on a later date. Dkt. 208. The court entered that order at the conclusion of trial, but stayed the injunction until after entry of final judgment. Dkt. 229. Upon final judgment, the district court re-entered the same permanent injunction order, but without the stay. *See* Dkts. 278, 279.

(citation omitted); (3) "an injunction alone" would not "deter all future infringement" and damage to Dewberry's reputation, *id.* at 16; (4) Dewberry had been prompt in asserting its rights, *id.* at 16–17; and (5) the public interest favored "making [DG's] conduct unprofitable," *id.* at 17.[2]

In calculating the *amount* of disgorgement, the district court conducted a separate analysis that, the Supreme Court later determined, improperly treated DG and its affiliates as "'a single corporate entity' for purposes of calculating a profits award." *Dewberry II*, 145 S. Ct. at 686. In the Supreme Court's view, the district court erred in calculating the "defendant's profits," for purposes of awarding disgorgement under 15 U.S.C. § 1117(a), by "total[ing] the profits of the named corporate defendant with those of separately incorporated affiliates not parties to the suit." *Dewberry II*, 145 S. Ct. at at 684; *see also id.* at 687 (quoting district court's statement that "all those companies should be 'treated as a single corporate entity'"). This yielded a total of nearly $43 million. Trial Order 29.

The district court's Trial Order also found that DG's multiple acts of "bad faith and intentional misconduct" rendered this action an "exceptional case" entitling Dewberry to an award of attorney's fees and costs under 15 U.S.C. § 1117(a), and directed Dewberry to submit a separate motion for determination of the appropriate

---

[2] The district court and parties agreed that this was not a case of "palming off"—the sixth *Synergistic* factor. Trial Order 18; *see Synergistic*, 470 F.3d at 176.

6

amount of the award in later proceedings.  Trial Order 27–29.  It later awarded Dewberry approximately $3.9 million in attorney's fees and costs.  Dkt. 311.

### B.    This Court affirms in *Dewberry I*.

DG appealed the above rulings, and this Court affirmed all of them.  *Dewberry I*, 77 F.4th at 273.  DG's appeal did not challenge any of the district court's evidentiary rulings or dispute that the district court's numerous factual findings were supported by evidence in the voluminous trial record.

This Court first held that the district court correctly granted summary judgment on the issue of DG's liability for breach of contract, *id.* at 277–79 (Part II.A), and trademark infringement, *id.* at 279–88 (Part II.B).  It next affirmed the district court's decision to permanently enjoin DG and other individuals and entities from using the infringing marks or engaging in other infringing or unfair conduct.  *Id.* at 288–89 (Part III.A).

This Court then affirmed the district court's disgorgement award of nearly $43 million.  *Id.* at 289–93 (Part III.B).  As the district court did, this Court separately considered whether Dewberry was entitled to disgorgement and, if so, the appropriate amount of the award.  As to entitlement, this Court agreed that the *Synergistic* factors weighed decisively in Dewberry's favor.  *Id.* at 289–90 (Part III.B.1), 291 (Part III.B.2).  And as to the appropriate amount, this Court held (though the Supreme Court would later disagree) that the district court did not err by

7

purporting to "treat[] Dewberry Group and its affiliates as a single corporate entity for the purpose of calculating revenues generated by Dewberry Group's use of infringing marks." *Id.* at 290–91 (Part III.B.1), 292–93 (Part III.B.2).

Finally, this Court affirmed the district court's award of attorney's fees and costs. *Id.* at 294 (Part III.C). Specifically, it affirmed the district court's ruling that Dewberry was "entitled to reasonable attorneys' fees." *Id.* at 294. This was an "exceptional case," warranting fee-shifting under Section 1117(a), because of DG's "bad faith, intentional misconduct." *Id.* This Court also implicitly rejected DG's request to reduce the fee award due to Dewberry's alleged failure to prove out-of-pocket damages on its breach of contract claim, *see* Final Brief of Appellant 57 n.8, holding that Dewberry adequately established reputational injury, *see Dewberry I*, 77 F.4th at 279.

### C. The Supreme Court grants certiorari on the sole issue presented to it—the quantum of Dewberry's disgorgement award—and in *Dewberry II* remands on that sole issue for "a new award proceeding."

Following this Court's affirmance, DG filed a petition for a writ of certiorari with the Supreme Court of the United States. DG presented only one narrow legal question for review:

> Whether an award of the "defendant's profits" under the Lanham Act, 15 U.S.C. § 1117(a), can include an order for the defendant to disgorge the distinct profits of legally separate non-party corporate affiliates.

Pet. for Cert. i, *Dewberry II*, 145 S. Ct. 681 (No. 23-900)[3]; Pet. Br. I (same). *See also* Pet. for Cert. 36 ("All this Court need decide is that the Lanham Act did not . . . allow[] courts, in assessing the profits of a defendant, to simply add the revenues from non-parties to a defendant's revenues for purposes of evaluating the defendant's profits."). DG did not challenge this Court's other rulings on liability, injunctive relief, Dewberry's entitlement to disgorgement as a remedy, or the post-trial award of attorneys' fees and costs to Dewberry. And having failed to challenge any of the district court's evidentiary rulings or factual findings in this Court, DG's petition to the Supreme Court also included no such challenge.

The Supreme Court granted certiorari on the narrow question presented and vacated this Court's judgment in a short opinion addressing that single question. Consistent with DG's limited ask, the Supreme Court made clear that none of the lower courts' other rulings, including the "findings of willful infringement," were "before" it. *Dewberry II*, 145 S. Ct. at 685. As the Supreme Court said, "All we hold today is that the courts below were wrong to treat [DG] and its affiliates as a single entity in calculating the 'defendant's profits.'" *Id.* at 688. In the Supreme Court's view, the district court erroneously calculated "defendants profits" under 15 U.S.C. § 1117(a) by "treat[ing] Dewberry Group and its affiliates 'as a single

---

[3] All further citations to briefings or transcripts refer to briefings or transcripts from the *Dewberry II* docket, No. 23-900.

corporate entity' for purposes of calculating a profits award," and "total[ing] the profits of the named corporate defendant with those of separately incorporated affiliates not parties to the suit." *Dewberry II*, 145 S. Ct. at 683–84. The Court explained that "defendant's profits" under Section 1117(a) are limited to those profits "properly ascribable to the defendant itself." *Id.* at 684, 686–87. The Court "therefore vacate[d] the judgment of the Court of Appeals and remand[ed] the case for further proceedings consistent with this opinion"—namely, "a new award proceeding" to determine the appropriate amount of Dewberry's disgorgement award. *Id.* at 688.

In this narrow opinion, the Supreme Court also called out various matters related to the calculation of the disgorgement award that it did *not* decide, leaving the lowers courts wide berth in the new award proceeding. *Id.* It expressly "le[ft] a number of questions unaddressed":

> First, we express no view on Dewberry Engineers' understanding of the just-sum provision. We have concluded only that the courts below did not invoke that provision to support the $43 million award. Whether (or how) they could have used the provision is not properly before us; still less is whether Dewberry Engineers may press its just-sum theory on remand given forfeiture rules.

> Second, we also state no view on the position of the Government respecting when courts, even without relying on the just-sum provision, can look behind a defendant's tax or accounting records to consider "the economic realities of a transaction" and identify the defendant's "true financial gain." Brief for United States as *Amicus Curiae* 13; see *id.*, at 18–22, 30–34; Tr. of Oral Arg. 36–41. Again, it is now up to the lower courts to decide whether to consider the Government's proposals.

And third, we offer no opinion on whether, as raised during oral argument here, corporate veil-piercing is an available option on remand. See *id.*, at 77; Brief for Respondent 52, n. 8.

*Id.*; *see also id.* at 690 (Sotomayor, J., concurring) ("[T]he Court today rightly declines to decide exactly when and how courts may look beyond a defendant's books in calculating Lanham Act disgorgement awards.").

This Court then ordered supplemental briefing on the three questions listed above—*i.e.*, (I) the aspects of this Court's earlier decision to be reinstated; (II) the remaining issues to be decided; and (III) whether this Court or the district court should decide those issues. *See* p. 1, *supra*.

## ARGUMENT

This Court should (I) reinstate its earlier rulings on liability, injunctive relief, attorney's fees, and Dewberry's entitlement to disgorgement—all of which are law of the case; (II) confirm that the sole issue remaining to be decided on remand is the appropriate *amount* of Dewberry's disgorgement award; and (III) remand this issue for the district court to hold the "new award proceeding."

**I.   This Court should reinstate its prior rulings on liability, the injunction, attorney's fees, and Dewberry's entitlement to disgorgement.**

**A.   The mandate rule protects all rulings not raised before the Supreme Court and not addressed in its remand order.**

The scope of proceedings following the Supreme Court's remand is governed by two related doctrines: the law of the case doctrine and the mandate rule.

11

The law of the case doctrine constrains, among other things, an appellate court's consideration of a case it has already passed upon.  Under the doctrine, "the factual findings and legal conclusions made by an appellate court generally bind all subsequent proceedings in the same case." *Hannah P. v. Haines*, 80 F.4th 236, 246 (4th Cir. 2023); 18B Wright, Miller, and Cooper, *Federal Practice & Procedure* § 4478 (3d ed. 2019) (Wright & Miller).  Without the doctrine, "an adverse judicial decision would become little more than an invitation to take a mulligan, encouraging lawyers and litigants alike to believe that if at first you don't succeed, just try again." *Entek GRB, LLC v. Stull Ranches, LLC*, 840 F.3d 1239, 1240 (10th Cir. 2016) (Gorsuch, J.).

The mandate rule—"a more powerful version of the law of the case doctrine"—speaks specifically to a lower court's scope of authority following a ruling from a higher court. *Invention Submission Corp. v. Dudas*, 413 F.3d 411, 414 (4th Cir. 2005).  Because "'an inferior tribunal is bound to honor the mandate of a superior court within a single judicial system,'" "the lower court may not deviate from" the higher court's "mandate but is required to give full effect to its execution." *Id.* (quoting 18B Wright & Miller § 4478.3).  In other words, the lower court cannot "intermeddle with it, further than to settle so much as has been remanded." *Sibbald v. United States*, 37 U.S. 488, 488 (1838).  *See also Bondi v. VanDerStok,* 145 S. Ct. 857, 866 n.2 (2025) (citing *Sibbald*).

12

The mandate rule narrows the scope of a remand in two ways. First, it "forecloses litigation on remand of issues decided by the [lower] court but foregone on [further] appeal." *United States v. Aramony*, 166 F.3d 655, 662 (4th Cir. 1999); *see Entek*, 840 F.3d at 1242 (explaining that such decisions become law of the case); 18B Wright & Miller § 4478.3 n.16 (noting the "general theory that issues not raised on an earlier appeal become assimilated into the law of the case"). Second, it forbids lower courts from going further than "instructed" by a remand order. *Doe v. Chao*, 511 F.3d 461, 466 (4th Cir. 2007); *see also, e.g.*, *Pearson v. Edgar*, 153 F.3d 397, 405 (7th Cir. 1998) ("When a remand is limited to a specific purpose, the [lower] court may not venture into other areas.").[4]

On remand, this Court's initial task is to assess "the scope of the Supreme Court's remand"—with additional briefing from the parties, if needed. *See Hyatt v. Heckler*, 807 F.2d 376, 381 (4th Cir. 1986). Those matters previously decided by this Court and "not embrace[d]" by the remand, *id.*, remain "the law of the case," *Pearson*, 153 F.3d at 405, and must be "reinstate[d]." *Hyatt*, 807 F.2d at 378.

---

[4] That is true even when the higher court has "vacated [the] entire judgment." *Pearson*, 153 F.3d at 405 (on remand from the Supreme Court); *see, e.g.*, *Kotler v. Am. Tobacco Co.*, 981 F.2d 7, 13 (1st Cir. 1992) (same); *Aldridge v. Baltimore & Ohio R. Co.*, 866 F.2d 111, 111 (4th Cir. 1989) (en banc) (same); *Hyatt v. Heckler*, 807 F.2d 376, 381 (4th Cir. 1986) (same).

13

**B.    This Court should reinstate all aspects of *Dewberry I* except for its affirmance of the district court's "treat[ment of] Dewberry Group and its affiliates as a single corporate entity in calculating the 'defendant's profits.'"**

Here, the mandate rule requires that this Court reinstate its prior rulings as to liability, injunctive relief, attorney's fees, and entitlement to disgorgement.  DG declined to appeal any of these issues to the Supreme Court, and cannot now relitigate them on remand.  In its petition for certiorari, DG presented only one question to the Supreme Court:  "Whether an award of the 'defendant's profits' under the Lanham Act, 15 U.S.C. § 1117(a), can include an order for the defendant to disgorge the distinct profits of legally separate non-party corporate affiliates." Pet. for Cert. i.  That question defined the scope of the Court's review.  S. Ct. R. 14.1(a) ("Only the questions set out in the petition, or fairly included therein, will be considered by the Court."); *Glover v. United States*, 531 U.S. 198, 205 (2001) ("As a general rule, . . . we do not decide issues outside the questions presented by the petition for certiorari.").

The Supreme Court then proceeded to answer only that one question.  As the Court itself said at the outset, "What remains in dispute is the District Court's award of profits to remedy the infringement."  145 S. Ct. at 685.  Every other issue was "not before" the Court.  *Id.* at 688.  Then in agreeing with DG, the Court expressly instructed that it was "remanding this case for a new award proceeding."  *Id.*; *see Doe*, 511 F.3d at 466 (mandate rule prohibits lower courts from going further than

14

"instructed" on remand). And in conclusion, the Court again stressed that "[a]ll we hold today is that the courts below were wrong to treat [DG] and its affiliates as a single entity in calculating the 'defendant's profits.'" *Dewberry II*, 145 S. Ct. at 688.

Accordingly, this Court should reinstate, as law of the case, its prior rulings as to liability, injunctive relief, Dewberry's entitlement to disgorgement, and the award of attorney's fees to Dewberry. Because DG did not seek certiorari review on any of these other issues and the Supreme Court thus did not consider these issues, they fall outside the scope of the remand. *Aramony*, 166 F.3d at 662; 18B Wright & Miller § 4478.3 n.16. The Court should therefore "reinstate" its rulings on these issues. *Hyatt*, 807 F.2d at 381.

## II.    The only remaining issue is the appropriate amount of Dewberry's disgorgement award.

The sole live issue on remand is the appropriate amount of Dewberry's disgorgement award. The Supreme Court reopened that issue when, as described above, it held that the lower courts erred in their original calculation of this award, and expressly remanded for a "new award proceeding." *Dewberry II*, 145 S. Ct. at 684, 688.

As the Supreme Court explained, this "new award proceeding" is the place to raise any alternative bases for calculating the disgorgement award, including, but not limited to, several bases that the Court specifically left "unaddressed." *Id.* at 688. Specifically, the Court declined to address "Dewberry Engineers' understanding of

the just-sum provision," and "[w]hether (or how)" the lower courts "could have used this provision"; whether "courts, even without relying on the just-sum provision, can look behind a defendant's tax or accounting records to . . . the defendant's 'true financial gain'"; and "whether . . . corporate veil-piercing is an available option on remand." *Id.*; *see, e.g.*, Resp. Br. 22–27, 50–52; Br. for United States as *Amicus Curiae* 13, 18–22, 30–34. These questions, all of which concern the appropriate amount of Dewberry's disgorgement award, remain open for consideration in the new award proceeding on remand. *See also Dewberry II*, 145 S. Ct. at 690 (Sotomayor, J., concurring) ("[This] Court today rightly declines to decide exactly when and how courts may look beyond a defendant's books in calculating Lanham Act disgorgement awards. In new award proceedings on remand, however, the lower courts may explore that important issue . . . .").

And while the Supreme Court discussed just those three issues that could be explored in recalculating the profits award on remand, these are not the only possible bases for justifying the profits award that was granted to Dewberry or some other amount. For example, the same amount of disgorgement could be justified by holding DG jointly and severally liable for the affiliates' profits under *Liu v. SEC*, 591 U.S. 71, 90 (2020), Resp. Br. 51–52, or based on DG's failure, under either the Lanham Act or the equitable principle of trustee *ex malefecio*, to meet its burden of identifying revenues not attributable to the infringement, *id.* at 46, 50–51. *See also*

16

Oral      Argument      Tr.      at      74:15–75:15,      *available      at*
https://www.supremecourt.gov/oral_arguments/argument_transcripts/2024/23-
900_3ebh.pdf.  Alternatively, some other disgorgement award could be justified
based solely on the revenues recorded DG's books.  Resp. Br. 52.  These questions,
and potentially others, bear directly on the recalculation of Dewberry's
disgorgement award, and therefore remain open, too.  *See Dewberry II*, 145 S. Ct. at
688 (remanding "for a new award proceeding" generally).

## III.     The district court should hold the "new award proceeding" and decide the remaining issue in the first instance.

This Court should remand for the district court to recalculate Dewberry's
disgorgement award.  After all, this Court is one "of review, not first view."  *United
States v. Avila*, 134 F.4th 244, 248 (4th Cir. 2025) (citation omitted).  And here, the
Lanham Act places the authority to calculate disgorgement awards with the district
court.  *See* 15 U.S.C. § 1117(a) ("The court shall assess such profits . . . ."); *id.* ("If
the court shall find that the amount of recovery based on profits is either inadequate
or excessive the court may in its discretion enter judgment for such sum as the court
shall find to be just, according to the circumstances of the case.").  This calculation
is a fact-specific analysis that requires a court to exercise its "broad discretion" to
determine an award that "serve[s] the interests of justice."  *Shell Oil Co. v.
Commercial Petro., Inc.*, 928 F.2d 104, 108 (4th Cir. 1991).  This analysis should
therefore be "performed by the district court in the first instance."  *Miller v.*

17

*Beshears*, 215 F.3d 1320, 2000 WL 699668, at *1 (4th Cir. May 19, 2000) (per curiam) (table) (remanding to the district court for a "highly fact-specific" analysis following a remand from the Supreme Court).

The district court is also the venue to consider questions of forfeiture, if any. In the Supreme Court, DG argued that Dewberry "forfeited" certain theories on remand. *E.g.*, Pet. Reply Br. 19–21, 24; Tr. of Oral Arg. 81–82. Dewberry disagreed that these arguments were forfeited. *See, e.g.*, Resp. Br. 52 n.8. But as the Supreme Court noted in declining to address the dispute, questions of forfeiture were not before it. *Dewberry II*, 145 S. Ct. at 688 ("Whether (or how) [the lower courts] could have used the [just-sum] provision is not properly before us, *still less is whether Dewberry Engineers may press its just-sum theory on remand given forfeiture rules*.") (emphasis added). Rather, such disputes are properly left to the district court in the first instance as part of the new award proceeding. *See In re Marriott Int'l, Inc.*, 78 F.4th 677, 687–88 (4th Cir. 2023) (declining to consider a waiver argument in the first instance as determinations related to "litigation strategy" are "squarely within the purview of the district court, which has by far the better vantage point").

And finally, the district court is likewise the appropriate forum for deciding, in the first instance, the scope of the factual record for the new award proceeding. It should determine whether the remand proceedings should be based on the existing trial record, or whether new evidence can or should be admitted, taking into account

18

that DG has never appealed any evidentiary rulings or findings of fact. *Dewberry II*, 145 S. Ct. at 690 (Sotomayor, J., concurring) ("[A] motion to reopen to submit additional proof is addressed to the trial court's sound discretion") (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc*., 401 U.S. 321, 331(1971)).

## **CONCLUSION**

For the foregoing reasons, this Court should reinstate the following aspects of its judgment in *Dewberry I*:

- affirmance of the district court's grant of summary judgment against DG for liability on breach of contract and trademark infringement (Part II of *Dewberry I*);

- affirmance of the district court's order granting injunctive relief against DG and other individuals and entities (Part III.A of *Dewberry I*);

- affirmance of the district court's order concluding that Dewberry is entitled to an award of defendant's profits under the Lanham Act (Part III.B.1 of *Dewberry I* (except its final four paragraphs), and Part III.B.2 of *Dewberry I* (at least its second and third paragraphs)); and

- affirmance of the district court's order finding this to be an "exceptional case" entitling Dewberry to attorney's fees and costs, as well as the subsequent award to Dewberry of $3.9 million of fees and costs (Part III.C of *Dewberry I*).

This Court should then remand to the district court "for a new award proceeding," *Dewberry II*, 145 S. Ct. at 688, in which Dewberry can present alternative grounds to restore its award of defendant's profits or, in the alternative, argue for an award of a different amount.

19

Dated:  May 22, 2025                    Respectfully submitted,

                                        */s/  Elbert Lin*

Noel J. Francisco                       Elbert Lin
Jennifer L. Swize                       Stephen P. Demm
Brett J. Wierenga                       David M. Parker
JONES DAY                               David N. Goldman
51 Louisiana Avenue, N.W.               HUNTON ANDREWS KURTH LLP
Washington, DC 20001-2113               Riverfront Plaza, East Tower
202-879-3939                            951 East Byrd Street
*njfrancisco@jonesday.com*              Richmond, VA 23219-4074
*jswize@jonesday.com*                   804-788-8200
*bwierenga@jonesday.com*                *elin@hunton.com*
                                        *sdemm@hunton.com*
                                        *dparker@hunton.com*
                                        *dgoldman@hunton.com*

                                        Arthur E. Schmalz
                                        HUNTON ANDREWS KURTH
                                        LLP
                                        2200 Pennsylvania Ave. NW,
                                        Washington, DC 20037
                                        202-955-1500
                                        *aschmalz@hunton.com*

                                        *Attorneys for Plaintiff-Appellee Dewberry
                                        Engineers Inc.*

20

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing complies with the type-volume limitation of this Court's April 4, 2025 Order because it contains 4,743 words, excluding the parts exempted by Fed. R. App. P. 32(f).  I also certify that the foregoing complies with the requirements of Fed. R. App. P. 32(a)(5)–(6) because it has been prepared in 14-point Times New Roman font, using Microsoft Word.

/s/ Elbert Lin
Elbert Lin

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2025, I electronically filed the foregoing with the Clerk of Court through the Court's CM/ECF system.  The participants in the case are registered CM/ECF users, and service will be accomplished through the CM/ECF system.

/s/ Elbert Lin
Elbert Lin

21