Nos. 22-1622(L), 22-1845

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

------

DEWBERRY ENGINEERS INC.,

*Plaintiff-Appellee*,

*v.*

DEWBERRY GROUP, INC., N/K/A DEWBERRY CAPITAL CORP.,

*Defendant-Appellant*,

------

On Appeal From The United States District Court
For The Eastern District Of Virginia
No. 1:20-cv-610 (Hon. Liam O'Grady (Ret.))

------

### SUPPLEMENTAL REPLY BRIEF OF
### DEFENDANT-APPELLANT DEWBERRY GROUP, INC.

------

Patrick J. Fuster
Matt Aidan Getz
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071
(213) 229-7000

Jonathan C. Bond
   *Counsel of Record*
Thomas G. Hungar
M. Christian Talley
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
(202) 955-8500
JBond@gibsondunn.com

*Counsel for Defendant-Appellant Dewberry Group, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................... 1

ARGUMENT ............................................................................ 3

I.    DEI Forfeited Any Alternative Bases For A Monetary
Award .................................................................................. 3

    A.    This Court's Vacated Disgorgement Ruling
Does Not Entitle DEI To Recover Or Overcome
Its Forfeiture .................................................... 4

    B.    This Court, Not The District Court, Should
Determine Which Legal Arguments DEI
Forfeited Or Waived ........................................ 7

II.    The Attorneys' Fees Award Should Be Vacated ................... 14

    A.    The Fee Award Should Be Vacated Because It
Was Based On A Now-Overturned
Disgorgement Award ....................................... 15

    B.    The Law-Of-The-Case Doctrine And The
Mandate Rule Cannot Insulate The Attorneys'
Fees Award ...................................................... 16

CONCLUSION ....................................................................... 18

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chesapeake Bay Foundation, Inc.* v. *Gwaltney of Smithfield, Ltd.*,
890 F.2d 690 (4th Cir. 1989) ................................................................ 12

*Dewberry Engineers Inc.* v. *Dewberry Group, Inc.*,
77 F.4th 265 (4th Cir. 2023) ............................................................. 4, 5

*Dewberry Group, Inc.* v. *Dewberry Engineers Inc.*,
145 S. Ct. 681 (2025) ............................................................................ 6

*Edd Potter Coal Co.* v. *Director*,
39 F.4th 202 (4th Cir. 2022) ............................................................... 10

*Elizabeth* v. *Pavement Co.*,
97 U.S. 126 (1878) ................................................................................. 5

*Exxon Shipping Co.* v. *Baker*,
554 U.S. 471 (2008) ............................................................................... 9

*Georgia-Pacific Consumer Products LP* v. *von Drehle Corp.*,
781 F.3d 710 (4th Cir. 2015) ................................................................. 5

*Hensley* v. *Eckerhart*,
461 U.S. 424 (1983) ............................................................................. 15

*Hicks* v. *Ferreyra*,
965 F.3d 302 (4th Cir. 2020) ............................................................... 10

*Johnson* v. *Board of Education*,
457 U.S. 52 (1982) ............................................................................... 16

*Liu* v. *SEC*,
591 U.S. 71 (2020) ............................................................................... 10

*Long* v. *Coast Resorts, Inc.*,
267 F.3d 918 (9th Cir. 2001) ............................................................... 16

*Mayor and City Council of Baltimore* v. *BP P.L.C.*,
   31 F.4th 178 (4th Cir. 2022) ................................................ 8

*O'Connor* v. *Donaldson*,
   422 U.S. 563 (1975) ........................................................ 16

*O'Reilly* v. *Board of Appeals*,
   942 F.2d 281 (4th Cir. 1991) ............................................ 13

*RSBCO* v. *United States*,
   104 F.4th 551 (5th Cir. 2024) ..................................... 15, 16

*Selvage* v. *Collins*,
   494 U.S. 108 (1990) ........................................................ 13

*Stokes* v. *Stirling*,
   64 F.4th 131 (4th Cir. 2023) ........................................ 7, 8

*Synergistic International, LLC* v. *Korman*,
   470 F.3d 162 (4th Cir. 2006) ............................................. 4

*Troy* v. *Bay State Computer Group, Inc.*,
   141 F.3d 378 (1st Cir. 1998) ............................................ 15

*In re Under Seal*,
   749 F.3d 276 (4th Cir. 2014) ......................................... 9, 14

*United States* v. *Bell*,
   5 F.3d 64 (4th Cir. 1993) ................................................. 17

*United States* v. *Frank*,
   8 F.4th 320 (4th Cir. 2021) ............................................... 9

**Statutes**

15 U.S.C. § 1117(a) .......................................................... 2, 4

**Other Authorities**

Charles Alan Wright & Arthur R. Miller,
   *Federal Practice & Procedure* (2d ed. Apr. 2025 update) .................. 16

**INTRODUCTION**

DEI does not dispute that the only arguments it offered in the district court and in this Court to support the $43 million disgorgement award were definitively rejected by the Supreme Court. The disgorgement award's legal basis thus has been eviscerated, and DEI does not defend it. But DEI downplays that case-altering outcome as much ado about nothing. In DEI's telling, none of that matters because DEI should get a free pass back to the district court, where it can start over from square one devising substitute remedial theories. At the same time, DEI insists that the original, nearly $4 million attorneys' fees award—which rested expressly on the amount of the now-erased disgorgement award—is etched in stone and impervious to intervening developments. DEI is wrong on both counts.

*First*, there is no disgorgement issue to send back to the district court because DEI repeatedly forfeited or affirmatively waived any alternative bases for a disgorgement award. None of DEI's new theories, first floated as afterthoughts in its Supreme Court merits briefing, was presented to the district court or this Court. DEI does not and cannot show otherwise. Those theories are therefore foreclosed. Respect for the appellate process, judicial economy, and fairness all compel enforcing DEI's forfeiture.

1

DEI identifies no valid reason for this Court to depart from its ordinary practice of refusing to allow unpreserved arguments to creep in. DEI's main response mischaracterizes this Court's prior ruling: It portrays that decision as conclusively settling that DEI is entitled to recover *something*, so the district court must now fill in supposedly trifling details—like whether any *new* theory supports recovery and, if so, how much. But that is not what this Court held or plausibly could have concluded. It determined only that DEI was entitled to disgorgement of the "defendant's profits." 15 U.S.C. § 1117(a). That profits-disgorgement determination is now useless to DEI because, as it previously admitted, no such profits exist. DEI thus needs some other basis for recovery. But it preserved no other theories, so it cannot pursue any today.

DEI tries to dodge this problem by asking that everything be sent back to the district court. But the Court's practice in this posture is to resolve for itself which, if any, issues are fair game. District courts have no comparative advantage in determining whether arguments have been preserved for appeal—matters this Court addresses every day. And outsourcing issues of preservation to the district court here risks time-

2

consuming proceedings on remand that a subsequent appeal may render a waste.

*Second*, there is no basis to leave standing an attorneys' fees award premised on a disgorgement award that DEI does not and cannot defend. Like fee awards generally, the award here depended on the degree of success DEI achieved, particularly its $43 million in disgorgement. Without that disgorgement, the $4 million fee award has lost its foundation. DEI's invocation of the mandate-rule and law-of-the-case labels cannot alter the basic fact that the Supreme Court has repudiated DEI's monetary win. This Court should vacate the award and remand for the district court to reconsider what fees are reasonable in light of DEI's diminished success.

## ARGUMENT

### I.    DEI Forfeited Any Alternative Bases For A Monetary Award

Tellingly absent from DEI's supplemental brief is any attempt to show that it preserved the belated theories of recovery it now advances. That silence is no surprise because DEI demonstrably did not preserve them. Nor does DEI attempt to meet the high standard for making a rare exception to forfeiture and waiver rules.

Instead, DEI deflects in two directions.  It principally contends that this Court's prior decision establishes DEI's "entitlement" to *some* recovery and that DEI is therefore free to backfill "other possible bases" for recovering "some other amount," Supp. Br. 15-16—no matter DEI's forfeiture of those alternative grounds.  DEI alternatively urges (*id.* at 18) that "questions of forfeiture" be left to the district court.  Both contentions lack merit.  And neither should distract from the central fact that DEI seeks a do-over on untimely theories it failed to preserve.

### A.    This Court's Vacated Disgorgement Ruling Does Not Entitle DEI To Recover Or Overcome Its Forfeiture

DEI's argument (Supp. Br. 2) that it is "*entitled* to disgorgement" distorts this Court's prior decision.  The Court previously held that DEI had met this Circuit's multi-factor test for Lanham Act awards of the "defendant's profits" under *Synergistic International, LLC* v. *Korman*, 470 F.3d 162 (4th Cir. 2006).  77 F.4th 265, 289 (4th Cir. 2023) (quoting 15 U.S.C. § 1117(a)).  That determination does DEI no good now because, as DEI conceded, Dewberry Group itself had no profits.  Dewberry Group Supp. Br. 20-22.

DEI now seeks to spin that remedy-specific determination into a free-floating pronouncement that DEI must recover on *some* basis and

that DEI may therefore swap in substitute rationales it never preserved—such as corporate veil-piercing, joint-and-several partner liability, trustee *ex maleficio*, or "potentially othe[r]" theories to be named later. Supp. Br. 16-17. But that is not what this Court held. It decided only that DEI satisfied the *Synergistic* factors for profits disgorgement, the only theory DEI pursued. 77 F.4th at 289-291.

More fundamentally, treating the *Synergistic* analysis as an empty vessel waiting to be filled by any new theory makes no sense. A judicial ruling that a plaintiff is entitled to a given remedy on a specific legal theory does not establish that the plaintiff is entitled to relief that requires a different showing. *E.g.*, *Elizabeth* v. *Pavement Co.*, 97 U.S. 126, 138, 140 (1878) (reversing disgorgement award because plaintiff did not prove that certain defendants "realized profit from the transactions" and so "[wa]s left to his remedy for damages"). A decision that a trademark plaintiff is entitled to disgorgement of profits thus is not interchangeable with an award of the same sum in damages. See *Georgia-Pacific Consumer Products LP* v. *von Drehle Corp.*, 781 F.3d 710, 717-719, 721-722 (4th Cir. 2015) (neither trebling nor prejudgment interest was authorized where plaintiff "did not undertake to prove its own *damages*, claiming

5

instead only a disgorgement of [the defendant's] gross *profits*"). So too here, this Court's prior disgorgement ruling cannot plausibly be construed, as DEI reads it, to mandate that DEI must recover a non-zero amount on *some* legal theory, even a new theory DEI never preserved.

DEI divines support for that illogical result from the Supreme Court's allusion to a "new award proceeding" on remand. Supp. Br. 10 (quoting 145 S. Ct. 681, 688 (2025)). But that shorthand does not prove DEI's entitlement to anything, let alone excuse DEI's forfeiture. To the contrary, that phrase encompassed a litany of "questions" the Court left "*unaddressed*," including application of "forfeiture rules." 145 S. Ct. at 688 (emphasis added). It cannot sensibly be read as a backhanded holding that DEI must receive monetary relief.

DEI's effort to recast the issue on remand as concerning merely the "amount" DEI may recover (Supp. Br. 15-16) fails for similar reasons. DEI cannot recover *at all* on the alternative grounds it now asserts unless DEI prevails on the merits of those backup theories. And DEI cannot prevail on grounds for relief it failed to preserve. The viability *vel non* of DEI's new arguments for recovery—including whether they are forfeited

or waived—is a merits question, not a ministerial issue of "calculation" (*id.* at 17) for green-eyeshade-outfitted accountants.

## B.  This Court, Not The District Court, Should Determine Which Legal Arguments DEI Forfeited Or Waived

DEI tries to defer the day of reckoning by proposing (Supp. Br. 18) that all questions of forfeiture and waiver be outsourced to the district court.  That approach departs from this Court's typical practice and has nothing to commend it.

**1.**    DEI's suggestion that this Court send everything to the district court without first addressing which issues are actually preserved departs from the Court's usual and recent practice in this posture.  In *Stokes* v. *Stirling*, 64 F.4th 131 (4th Cir. 2023), for example, this Court had reversed the judgment of the district court dismissing a habeas petition, but the Supreme Court vacated this Court's judgment in light of an intervening decision.  See *id.* at 135-136.  On remand to this Court, the appellees (South Carolina officials) raised for the first time an argument premised on principles addressed in that intervening decision.  *Id.* at 136.  After ordering supplemental briefing on whether that argument had been preserved, this Court held it was not:  The appellees had "forfeited th[e] argument by choosing not to raise it during earlier proceedings be-

7

fore this Court." *Id.* at 133; see also, *e.g.*, *Mayor and City Council of Baltimore* v. *BP P.L.C.*, 31 F.4th 178, 202 (4th Cir. 2022) (concluding that party had "waived" argument it sought to press on remand following vacatur by Supreme Court).  The same pattern should produce the same result here.

That approach makes good sense.  Appellate courts are perfectly capable of determining whether issues raised on appeal are preserved. Trial courts certainly are not better equipped than courts of appeals to resolve those issues, which requires not weighing evidence or judging credibility but consulting a cold record.  That is especially true where (as here) the preservation questions turn partly on prior submissions to the appellate court *itself*.  An appellate court is best positioned to determine whether, under its own rules or precedent on preservation, briefs submitted during an earlier phase of the appeal were sufficient.  DEI's contrary approach requiring a district court to opine on what was preserved for appeal serves no purpose and would turn appellate review into a pointless ping-pong game.

DEI gets no mileage from the maxim that an appellate court "is one 'of review, not first view.'"  Supp. Br. 17 (citation omitted).  That axiom

8

often counsels caution before an appellate court addresses arguments that *were* preserved but that "the district court" did not "conside[r]" for some reason—for example, if it decided the case on another ground. *United States* v. *Frank*, 8 F.4th 320, 332-333 (4th Cir. 2021). The trial court's assessment of the merits may aid this Court's eventual analysis. But that principle has no application to *unpreserved* arguments asserted on appeal. An appellate court faced with an argument not raised below is *always* being asked to take the first cut. This Court respects the "orderly progression" of litigation when it enforces "waiver and forfeiture rules" on appeal. *In re Under Seal*, 749 F.3d 276, 286 (4th Cir. 2014) (quoting *Exxon Shipping Co.* v. *Baker*, 554 U.S. 471, 487 n.6 (2008)).

**2.** DEI identifies no persuasive reason to depart from that typical practice here. To the contrary, it is entirely appropriate—and much more efficient—for this Court to resolve which of DEI's theories are unpreserved than to delegate that task to the district court.

*First*, applying forfeiture and waiver principles here is straightforward. The standard is purposefully "rigorous": This Court will not entertain new arguments on appeal except to avoid "'a denial of fundamental justice'"—"an even higher bar than the 'plain error' standard applied

in criminal cases." *Hicks* v. *Ferreyra*, 965 F.3d 302, 310 (4th Cir. 2020) (citation omitted). And "[t]he mere fact of a remand does not wipe the whole slate clean." *Edd Potter Coal Co.* v. *Director*, 39 F.4th 202, 210 (4th Cir. 2022). After all, "allowing parties to raise issues for the first time on remand does nothing to discourage [the] sandbagging" that forfeiture rules seek to prevent. *Id.* at 212.

Here, as Dewberry Group demonstrated (Supp. Br. 15-23), DEI never raised in the district court, in this Court, or in opposing certiorari any of the new theories it attempted to inject in its Supreme Court merits briefing. The same is true of the (overlapping) arguments DEI's supplemental brief enumerates:

- ***Joint-And-Several Partner Liability.*** DEI posits that Dewberry Group could be "jointly and severally liable for the affiliates' profits under *Liu* v. *SEC*, 591 U.S. 71, 90 (2020)," Supp. Br. 16, which discussed "liability for partners engaged in concerted wrongdoing," 591 U.S. at 90. But DEI never raised that inapposite partnership theory in the district court or this Court, mentioning it for the first time in the single sentence of its Supreme Court merits brief that

DEI now cites. Supp. Br. 16 (quoting Resp. Br. 52, *Dewberry*, *supra* (No. 23-900) (DEI S. Ct. Br.)); see Dewberry Group Supp. Br. 17-18.

- ***Dewberry's Own Revenues.*** DEI speculates (Supp. Br. 17) that "some other disgorgement award could be justified" based on a revisionist account of Dewberry Group's books. But DEI waived that argument by asserting the opposite until it swerved in the single cited paragraph of its Supreme Court merits brief. See Dewberry Group Supp. Br. 20-22.

- ***Trustee* Ex Maleficio.** DEI suggests that it might recover the "same amount" as the original $43 million award under "the equitable principle of trustee *ex malefecio* [sic]." Supp. Br. 16-17 (citing DEI S. Ct. Br. 46, 50-51 and Tr. of Oral Arg. 74-75, *Dewberry*, *supra* (No. 23-900)). Again, DEI's citations give the game away: This argument first surfaced at the merits stage in the Supreme Court.

- ***Other Theories.*** DEI tosses in a cryptic catchall, suggesting that "potentially othe[r]" issues may "bear" on its recovery and "therefore remain open." Supp. Br. 17. Nowhere did DEI preserve anything, much less everything, that placeholder covers. Cf. Dewberry Group Supp. Br. 16-19, 22-23 (explaining that DEI forfeited or af-

firmatively waived any theories of assignment, veil-piercing, or a "just sum" less than all the affiliates' profits).

*Second*, remanding for the district court to address forfeiture and waiver in the first instance would bring no benefit. The preservation question does not hinge on taking and weighing any "new evidence." DEI Supp. Br. 18. It entails simply reviewing discrete portions of DEI's first set of briefs and the existing record to discern what DEI previously argued in this Court, as well as in the district court. "[S]ince the record in this respect is fully developed, nothing would be gained by another remand for an initial decision by the district court on this issue." *Chesapeake Bay Foundation, Inc.* v. *Gwaltney of Smithfield, Ltd.*, 890 F.2d 690, 696 (4th Cir. 1989). The district court instead would be examining the *same* briefs and record as this Court to determine whether DEI's new arguments were preserved. There is no reason to think the district court is better positioned to undertake that inquiry, particularly as to whether DEI forfeited its new theories in *this* Court.

*Third*, remanding for the district court to address preservation would be highly inefficient for multiple reasons. For one, if this Court ultimately rejects some or all of the district court's conclusions on

12

whether particular issues were preserved, then proceedings on remand may be wasted effort. Whichever party disagrees with the district court's preservation determinations could appeal at the end of the proceedings on remand, and this Court might reverse the district court. A trial on joint-and-several partner liability or veil-piercing, for example, would be a deadweight loss of the district court's and the parties' time and resources if this Court later holds that DEI forfeited or waived those theories. This Court can and should avoid that inefficiency by determining now whether DEI preserved any of its new theories.

For another, this is not a case where the trial-court adjudicator "is more familiar" with the issues than the appellate court. *Selvage* v. *Collins*, 494 U.S. 108, 110 (1990) (per curiam). The district judge who presided over the disgorgement trial (O'Grady, J.) has since retired, and a new judge not involved previously has been assigned to the case. By contrast, this Court has already studied the record and issued a published decision. "[R]emand" thus "would be an unnecessary waste of judicial * * * resources." *O'Reilly* v. *Board of Appeals*, 942 F.2d 281, 284 (4th Cir. 1991).

13

*****

Straightforward application of settled preservation principles leaves no doubt that DEI's new theories are forfeited or waived. Applying those principles here falls comfortably within this Court's ken and simply requires reviewing DEI's prior submissions to the district court and this Court. Properly enforcing those principles will avoid the risk of unnecessary or misdirected proceedings on remand. And doing so protects *this* Court's "judicial resources," *Under Seal*, 749 F.3d at 286 (citation omitted), by discouraging litigants from smuggling in issues on appeal that the court below never had a chance to address. This Court should make clear before remanding which of DEI's new arguments are off-limits.

## II. The Attorneys' Fees Award Should Be Vacated

The proper disposition of the $4 million award of attorneys' fees DEI obtained is equally straightforward: The fee award rested explicitly on the $43 million disgorgement award that the Supreme Court has since held contravened the Lanham Act. The fee award should accordingly be vacated and redetermined after the disgorgement issues are resolved. DEI attempts to insulate that obsolete fee award by invoking the law-of-the-case doctrine and the mandate rule, but neither justifies leaving in-

14

tact a fee award premised on a merits ruling overturned by the Supreme Court.

## A.  The Fee Award Should Be Vacated Because It Was Based On A Now-Overturned Disgorgement Award

The "degree of success obtained" is "the most critical factor" in assessing a reasonable fee. *Hensley* v. *Eckerhart*, 461 U.S. 424, 436 (1983). The amount of disgorgement DEI previously obtained (nearly $43 million) was a primary driver of its $3.8 million attorneys' fees award.  Both DEI itself and the district court drew this connection.  See Dewberry Group Supp. Br. 25.  But the Supreme Court's decision renders that disgorgement award unsustainable.  Even DEI admits (Supp. Br. 16) that the disgorgement award's status is now unsettled.  The central pillar propping up the fee award thus has been bulldozed.

The proper course is the one courts routinely follow:  vacate the fee award for redetermination after the underlying issues are resolved.  Take *Troy* v. *Bay State Computer Group, Inc.*, 141 F.3d 378 (1st Cir. 1998), where the First Circuit determined that the district court had awarded too much in backpay and then vacated the fee award because the district court had given "weight to the very substantial [backpay] award" in awarding fees.  *Id.* at 383-384.  Or *RSBCO* v. *United States*, 104 F.4th

15

551 (5th Cir. 2024), where the Fifth Circuit's decision overturning a verdict meant that the attorneys' fees award "must likewise be vacated" and reconsidered. *Id.* at 562. Or *Long* v. *Coast Resorts, Inc.*, 267 F.3d 918 (9th Cir. 2001), where the Ninth Circuit's mixed decision required "vacat[ing] the [fee] award to allow the district court to recalculate it in light of [the] holdings in th[e] case." *Id.* at 925-926.

Here, too, the fees award rests on the disgorgement order that the Supreme Court held unlawful, and so it is "'embrace[d]' by" that decision. DEI Supp. Br. 13 (citation omitted). Vacating the fees award also avoids the "unseemly spectacle" of "enforcing a fee award based on a judgment that has been reversed." 15B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3915.6 (2d ed. Apr. 2025 update).

## B. The Law-Of-The-Case Doctrine And The Mandate Rule Cannot Insulate The Attorneys' Fees Award

DEI errs in contending (Supp. Br. 12-15) that the law-of-the-case doctrine and the mandate rule compel this Court to reinstate the original fee award as if the Supreme Court's decision on disgorgement did not exist. The Supreme Court's "opinion and judgment" are now "the sole law of the case" on issues within their scope. *O'Connor* v. *Donaldson*, 422 U.S. 563, 577 n.12 (1975); see *Johnson* v. *Board of Education*, 457 U.S. 52,

16

53-54 (1982) (per curiam).  The mandate rule similarly requires a lower court to "implement both the letter and spirit of the" higher court's "mandate," *United States* v. *Bell*, 5 F.3d 64, 66 (4th Cir. 1993) (citations omitted), not to carry out an artificially wooden, Simon-says instruction.  The Supreme Court's clear message was that the $43 million disgorgement award violates the Lanham Act.  The law of the case now is thus that the linchpin of the fee award is unlawful.  And faithfully implementing the Supreme Court's mandate means recognizing that the fee award's premise has evaporated.

DEI appears to contend (Supp. Br. 2, 14) that Dewberry Group cannot challenge the fee award because it did not separately seek certiorari on attorneys' fees, and the Supreme Court did not address that issue.  DEI's selective focus on forfeiture principles is jarring, and in all events DEI caricatures the law-of-the-case and mandate-rule doctrines it invokes.  Dewberry Group undisputedly challenged both the disgorgement and the attorneys' fees awards in this Court.  JA4412, JA4415, JA4433; Doc. 31, at 57-58.  Given the fee award's explicit, necessary dependence on the disgorgement award, Dewberry Group had no need to seek Supreme Court review of attorneys' fees as well.  The fee award is inextri-

17

cably intertwined with the judgment on which it is based, so overturning the disgorgement award would necessarily require revisiting fees.

## CONCLUSION

The Court should reverse the disgorgement order, vacate the award of attorneys' fees, and remand for the district court to recalculate a reasonable fee award.

Dated:  June 18, 2025

Respectfully submitted.

*/s/ Jonathan C. Bond*

Patrick J. Fuster
Matt Aidan Getz
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071
(213) 229-7000

Jonathan C. Bond
   *Counsel of Record*
Thomas G. Hungar
M. Christian Talley
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
(202) 955-8500
JBond@gibsondunn.com

*Counsel for Defendant-Appellant Dewberry Group, Inc.*

# CERTIFICATE OF COMPLIANCE

This supplemental reply brief complies with the word limit set by order of this Court, Doc. 80, as it contains 3,487 words, excluding the portions exempted by Rule 32(f) of the Federal Rules of Appellate Procedure.

The supplemental reply brief also complies with the typeface requirements of Rule 32(a)(5)(A) and the type-style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in 14-point, New Century Schoolbook font.

Dated: June 18, 2025            GIBSON, DUNN & CRUTCHER LLP

By: _____*/s/ Jonathan C. Bond*_____

*Counsel for Defendant-Appellant*
*Dewberry Group, Inc.*

## CERTIFICATE OF SERVICE

I certify that on June 18, 2025, I electronically filed the foregoing reply brief with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system, which will send a notification of such filing to all counsel of record.

Dated: June 18, 2025

GIBSON, DUNN & CRUTCHER LLP

By: ____*/s/ Jonathan C. Bond*_____

*Counsel for Defendant-Appellant*
*Dewberry Group, Inc.*