**Nos. 22-1622, 22-1845**

## IN THE UNITED STATES COURT OF APPEALS
### FOR THE FOURTH CIRCUIT

**DEWBERRY ENGINEERS INC.,**
**Plaintiff-Appellee,**

**v.**

**DEWBERRY GROUP, INC. n/k/a Dewberry Capital Corp.,**
**Defendant-Appellant.**

## DEWBERRY ENGINEERS INC.'S SUPPLEMENTAL REPLY BRIEF

Noel J. Francisco
Jennifer L. Swize
Brett J. Wierenga
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113
202-879-3939
njfrancisco@jonesday.com
jswize@jonesday.com
bwierenga@jonesday.com

Elbert Lin
Stephen P. Demm
David M. Parker
David N. Goldman
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074
804-788-8200
elin@hunton.com
sdemm@hunton.com
dparker@hunton.com
dgoldman@hunton.com

Arthur E. Schmalz
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Ave. NW,
Washington, DC 20037
202-955-1500
aschmalz@hunton.com

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................... ii

GLOSSARY ............................................................................................ iv

INTRODUCTION .....................................................................................1

ARGUMENT .............................................................................................2

   I.   This Court should remand for recalculation of Dewberry's disgorgement award. ...................................................................................................2

   II.  This Court should reinstate the award of attorney's fees.............................12

CONCLUSION ........................................................................................14

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Chafin v. Chafin*,
    568 U.S. 165 (2013)........................................................................13

*Dewberry Grp., Inc. v. Dewberry Eng'rs Inc.*,
    145 S. Ct. 681................................................................................*passim*

*Fawcett v. McRoberts*,
    326 F.3d 491 (4th Cir. 2003) .....................................................12, 13

*Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.*,
    240 U.S. 251 (1916)..................................................................4, 9, 10

*Invention Submission Corp. v. Dudas*,
    413 F.3d 411 (4th Cir. 2005) ............................................................13

*Long v. Coast Resorts, Inc.*,
    267 F.3d 918 (9th Cir. 2001) ............................................................12

*In re Marriott Int'l, Inc.*,
    78 F.4th 677 (4th Cir. 2023) ...........................................................2-3

*RSBCO v. United States*,
    104 F.4th 551 (5th Cir. 2024) ...........................................................12

*Sanford v. Clarke*,
    52 F.4th 582 (4th Cir. 2022) .........................................................5, 10

*Stokes v. Stirling*,
    64 F.4th 131 (4th Cir. 2023) ............................................................11

*Synergistic Int'l, LLC v. Korman*,
    470 F.3d 162 (4th Cir. 2006) .............................................................1

*United States v. McRae*,
    793 F.3d 392 (4th Cir. 2015) ............................................................14

**Statutes**

15 U.S.C. § 1117(a) .........................................................................6, 7, 8

**Other Authorities**

Fed. R. App. P. 32(a)(5)-(6) ....................................................................16

Fed. R. App. P. 32(f) ...............................................................................16

Fed. R. Civ. P. 60(b)(5) .......................................................................2, 14

15B Wright & Miller, *Federal Practice & Procedure* § 3915.6 (2d ed. Apr. 2025 update) ...........................................................................13, 14

# GLOSSARY

| | |
|---|---|
| 10/12/21 Tr. (Morning) | Transcript of Proceedings Held on 10-12-21, Morning Session, E.D. Va. Doc. 230 |
| 10/12/21 Tr. (Afternoon) | Transcript of Proceedings Held on 10-12-21, Afternoon Session, E.D. Va. Doc. 237 (public/redacted); Doc. 231 (under seal) |
| 10/13/21 Tr. | Transcript of Proceedings Held on 10-13-21, Afternoon Session, E.D. Va. Doc. 233 |
| Dewberry CA4 Response Br. | Response Brief by Appellee Dewberry Engineers Inc., Fourth Circuit Doc. 49 |
| Dewberry FF/COL | Plaintiff Dewberry Engineers' 12/15/21 Proposed Findings of Fact and Conclusions of Law, E.D. Va. Doc. 239 (public/redacted); Doc 242 (under seal) |
| Dewberry Opp. to DG's Post-Trial Brief | Plaintiff Dewberry Engineers Inc.'s Opposition to Proposed Findings of Fact, E.D. Va. Doc. 246 (public/redacted); Doc. 249 (under seal) |
| Dewberry Supp. Br. | Supplemental Brief by Appellee Dewberry Engineers Inc., Fourth Circuit Doc. 89 |
| DG Supp. Br. | Supplemental Brief by Appellant Dewberry Group, Inc., Fourth Circuit Doc. 84 |
| Respondent's Br. | Brief of Respondent Dewberry Engineers Inc., *Dewberry Grp., Inc. v. Dewberry Eng'rs Inc.*, 145 S. Ct. 681 (No. 23-900) |

## **INTRODUCTION**

Dewberry Group ("DG") doesn't dispute that most of this Court's original decision must be reinstated. It does not contest this Court's affirmance of the district court's rulings: granting summary judgment on DG's liability for breach of contract and trademark infringement; granting injunctive relief; finding Dewberry Engineers ("Dewberry") entitled to disgorgement under *Synergistic*[1]; and finding this case "exceptional," entitling Dewberry to attorney's fees and costs.

DG targets just two other aspects of this Court's prior decision. But its arguments are unavailing.

First, for disgorgement—the only issue remanded by the Supreme Court—DG says this Court should outright reverse and order an award of $0. While not challenging Dewberry's *entitlement* to disgorgement, DG claims that—despite its willful, bad-faith infringement—the award should be $0 because Dewberry allegedly forfeited any viable arguments for a higher amount. But these arguments are, at best, premature. As Dewberry's opening brief observed, purported forfeiture questions should be addressed by the district court in the first instance. Regardless, DG's arguments are also wrong, as explained below.

Second, raising a new challenge it never raised to the Supreme Court, DG says this Court should vacate Dewberry's fee award and remand for further proceedings.

---

[1] *See Synergistic Int'l, LLC v. Korman*, 470 F.3d 162 (4th Cir. 2006).

Here again, DG does not contest Dewberry's *entitlement* to attorney's fees, but claims the *amount* of the award is "upended" by vacatur of the disgorgement calculation. DG never raised this argument in the Supreme Court, however, so it's foreclosed by the mandate rule. DG's only possible recourse is a Rule 60(b)(5) motion in the district court. And such motion would fail anyway, because the fee award remains amply supported by Dewberry's overall success.

As Dewberry outlined previously, this Court should remand only for recalculation of Dewberry's disgorgement award after reinstating the rest of its prior decision.

## **ARGUMENT**

### **I. This Court should remand for recalculation of Dewberry's disgorgement award.**

DG's arguments that Dewberry forfeited any basis for a disgorgement award greater than $0 are premature and wrong.

First, DG's arguments should be addressed by the district court. Dewberry Supp. Br. 17-19. As DG's brief confirms, its forfeiture arguments are highly fact-intensive—hinging on whether various arguments were preserved in the voluminous record, including Dewberry's "expert report[s] ... , factual submissions to the district court during the three-day trial on disgorgement, [and] its subsequent briefing to the district court." DG Supp. Br. 15. Such questions are "squarely within the purview

of the district court, which has by far the better vantage point." *In re Marriott Int'l, Inc.*, 78 F.4th 677, 687-88 (4th Cir. 2023).

Second, and in any event, DG's forfeiture arguments are wrong. Dewberry expressly preserved its argument that, under any plausible approach, it is entitled to a disgorgement award greater than $0. Below are a few examples:

**DG's true financial gain/assignment**. Relying on extensive expert opinion evidence—that DG never challenged on appeal—Dewberry preserved the argument that it can recover DG's "true financial gain" from the infringement. *See, e.g.*, JA6602 (Bosco Supp. Expert Rep.) ("Valuing the Enrichment to Dewberry Group"); *id.* ("Revenue Enrichment to Dewberry Group."). This includes the argument that DG effectively assigned its own revenues to the affiliates and their common owner, John Dewberry. *See* DG Supp. Br. 16-17. Dewberry argued this at length in the district court:

- Revenues "generated by Dewberry Group, Inc. [through infringement] … were ultimately distributed to the Ownership Entities [affiliates] and John Dewberry," Dewberry FF/COL ¶ 49;

- "[T]he Ownership Entities do not and cannot perform the work and services necessary to generate revenues," so "all revenues generated through Dewberry Group, Inc's services show up exclusively on the Ownership Entities' books," *id.* ¶ 51, making DG "the economic engine at the heart of a larger, unified Dewberry Group real estate business … for which [DG] is allocated virtually all of the costs … , while the Ownership Entities receive the vast majority of the revenues," *id.* ¶ 57;

3

- John Dewberry, who owns DG and its affiliates, "chooses to account for leasing revenues by attributing them to the [affiliates] instead of the entity actually responsible for generating them," *id.* ¶ 108;[2]

- "John Dewberry then uses those profits to make up for the losses shown by Dewberry Group, Inc"; he injected "at least $23 million to cover [DG's] massive losses," *id.* ¶¶ 54, 58;

- DG is "far more successful and profitable than the tax returns of Dewberry Group, Inc., in isolation, appear to show," which is why it "has stayed in business despite the sea of red ink on its tax returns," *id.* ¶ 57; and

- Where, as here, the infringer creates "uncertainty" about its true gains, "[a]ny doubts about the actual amount of gross sales or profits will be resolved against the infringing party,'" *id.* ¶ 102 (citing *Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251, 262 (1916)).

These arguments relied on economic analysis of Dewberry's financial expert, Rodney Bosco, in his two reports and four hours of testimony—the admissibility of which remains unchallenged.[3]  For example, Bosco explained:

> [T]here's a wide amount of economic evidence to suggest that the way in which Dewberry Group chose to record revenues and expenses to this taxable entity does not capture all of the benefits associated with the Dewberry Group commercial real estate

---

[2] *See also id.* ¶ 76 ("Freeman agreed that John Dewberry controls the allocation of revenues and expenses to Dewberry Group, Inc. and the Ownership Entities"); 10/13/21 Tr. 54:12-15 ("[John Dewberry is] in control of both sides of the table here, right?  He's in control of the payor and the payee in this transaction? A. Yes."); 10/12/21 Tr. (afternoon) 69:4-11 (Bosco Redirect) (DG's "management" ("John Dewberry") "decides the allocation of expenses and revenues that determines whether on paper Dewberry Group, Inc. or the [affiliates] show the losses or profits during the infringement period").

[3] JA6441-42, 6450-54; 6575-76, 6589-90; 10/12/21 Tr. (morning) 69:4-72:16; 80:13-83:23.

business…. The benefits … actually appear on the profit and loss statements of the [affiliates]….

10/12/21 Tr. (afternoon) 21:9-22:6. DG never appealed the admission of Bosco's testimony and reports into evidence, making it law of the case. Dewberry Supp. Br. 12-13.

DG protests that Dewberry didn't use the word "assignment" below. DG Supp. Br. 16. But preservation "does not demand the incantation of particular words." *Sanford v. Clarke*, 52 F.4th 582, 587 (4th Cir. 2022). In any event, the assignment concept is founded on the myriad ways that a district court may exercise its traditional equitable powers to "look behind a defendant's tax or accounting records to consider 'the economic realities of a transaction' and identify the defendant's 'true financial gain.'" *Dewberry Grp., Inc. v. Dewberry Eng'rs Inc.*, 145 S. Ct. 681, 688 (2025). As discussed above, that argument was clearly preserved.

Nor did Dewberry "invite" the district court to treat DG and its affiliates as a "single corporate entity," as DG wrongly suggests. DG Supp. Br. 5, 6, 10. Rather, the description of DG and its affiliates as "a single corporate entity" was a characterization used in the district court's opinion. JA4376. Dewberry never argued that corporate distinctions were meaningless. As Bosco explained, because DG's artificial losses resulted from its economically unsupported allocation of revenues to affiliates, the amount of infringement-tainted gains assigned to the

5

affiliates represented "the best available proxy measure for [DG's] enrichment." JA6603; *see also supra*, pp. 4-5. Further, Bosco simply evaluated the copious economic and other evidence "as an economist … trying to understand the nature of the commerce that's being conducted here," and testified that, "from an economic perspective, … it's reasonable to consider the gross sales associated with [DG's affiliates] as opposed to just what is being reported in the tax returns of Dewberry Group, Inc." 10/12/21 Tr. (morning) 82:25-83:23.

In short, as shown above, Dewberry preserved a theory focused on true financial gain that can rely on evidence outside an infringer's cooked books. *Cf. Dewberry II*, 145 S. Ct. at 689 ("[P]rinciples of corporate separateness do not blind courts to economic realities …., including efforts to obscure a defendant's true financial gain through arrangements with affiliates.") (Sotomayor, J., concurring).

**DG's revenues**. Dewberry repeatedly preserved an argument for recovering at least the gross revenues on DG's own books, given DG's failure to satisfy its burden of proving deductible costs or expenses under 15 U.S.C. § 1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."). Dewberry advanced this argument in the district court, this Court, and the Supreme Court alike:

- "Given the plain unreliability of [DG's] expenses, which [DG's expert] did not analyze despite having the burden on that issue, at the very least, all of [DG's] undisputed revenue received during the infringement period is subject to disgorgement, namely $6.6 million

6

(2018-20), or $7.9 million if 2017 is included." Dewberry FF/COL ¶ 75.

- "Dewberry would be entitled to disgorgement of DG's revenues during the infringement period, because DG failed to carry its burden of proving that any of its own costs were properly deductible from them. Those revenues were $7.96 million for 2017-2019, or $6.6 million if 2017 is omitted." Dewberry CA4 Response Br. 59 n.14.

- "Respondent could recover the revenues in petitioner's own books (from which petitioner failed to prove any deductions) as receipt for selling its infringing services to the affiliates. Even without consideration of the affiliates' profits, the 'defendant's profits' weren't zero." Respondent's Br. 52 (citation omitted).

DG nevertheless claims that Dewberry "affirmatively waived" this argument by acknowledging that DG "recorded losses" on its tax returns. DG Supp. Br. 20-21. That's incorrect. As the quotes above illustrate, Dewberry and its expert consistently asserted that DG's purported losses were false, and that DG failed to prove that its "recorded" expenses were properly *deductible* from its revenues under Section 1117(a)'s burden-shifting regime.[4] The district court agreed that DG "did no analysis of [its] expenses," and therefore "failed to carry its … burden[] of proof

---

[4] Indeed, Bosco not only identified DG's own gross revenues as subject to disgorgement, but he also highlighted numerous dubious expenses shown on DG's books that exceeded DG's stated revenues, such as "John Dewberry's private aircraft expenses." JA6453 ¶ 15.

on deductions." JA4393.  DG never appealed this ruling, so it too is law of the case. Dewberry Supp. Br. 12-13.[5]

**Just sum**.  Dewberry also preserved arguments that the "just-sum" provision justifies some or all of the prior disgorgement award.[6]  Dewberry expressly argued that this provision authorized the district court "to adjust an award up or down as circumstances demand." Dewberry FF/COL ¶ 72.  Indeed, DG doesn't dispute that Dewberry relied on this provision below.  Instead, DG asserts that (1) the Supreme Court rejected any argument that the just-sum provision could justify the original $43 million award; and (2) Dewberry forfeited any argument under the just-sum provision for a "lesser amount."  DG Supp. Br. 11-12, 18-19.  Both arguments fail.

First, the Supreme Court didn't rule that the just-sum provision couldn't support a $43 million disgorgement award on remand.  It "concluded only that the courts below *did not invoke* the provision to support the $43 million award." *Dewberry II*, 145 S. Ct. at 688 (emphasis added).  And it "express[ed] no view on

---

[5] Notably, DG's Supreme Court appeal didn't challenge the district court's evidentiary rulings or factual findings, but instead was a purely legal attack on the district court's purported treatment of DG and its affiliates as "a single corporate entity" without explaining a sufficient basis for doing so.  Dewberry Supp. Br. 8-9.

[6] 15 U.S.C. § 1117(a) ("If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.").

[Dewberry's] understanding of the just-sum provision," emphasizing that "[w]hether (or how) [the lower courts] could have used the provision is not properly before us." *Id.*

DG cites the Supreme Court's statement that the district court "could not plausibly have concluded that *all*" of the affiliates' profits "were properly attributable to Dewberry Group." DG Supp. Br. 11-12. But that was just one of the Court's reasons for concluding that the district court "did not rely on the just-sum provision," or "suggest" that it was awarding DG's "true gain." *Dewberry II*, 145 S. Ct. at 687-88. It was not a holding controlling whether or how the just-sum provision could apply on remand. That is clear not only from context, but also because, as noted above, the Supreme Court *said as much*. *Id.* at 688 ("Whether (or how) the[] [lower courts] could have used the provision is not properly before us.").

Further, even assuming the statement were controlling, it would not prevent Dewberry from recovering $43 million under the just-sum provision. Dewberry could still argue (as it has before) that DG failed to disentangle the affiliates' true gains from DG's. *See, e.g.*, Dewberry Opp. to DG's Post-Trial Brief 17 (arguing that DG failed to "disentangle those Ownership Entities [affiliates] from Dewberry Group in the equitable disgorgement analysis"). Given DG's failure, the district court could award a sum based on *all* of the profits formally ascribed to affiliates, whether truly the gains of the affiliates or not. *Hamilton*, 240 U.S. at 259, 262 ("[O]n

9

the theory of a trust *ex maleficio* …. [i]f [an infringer] wrongfully mixes his own goods with those of another, so that they cannot be distinguished and separated, he shall lose the whole….").  Dewberry specifically argued below that "[a]ny uncertainty as to apportionment is borne by the infringer." *E.g.*, Dewberry FF/COL ¶ 102 (citing *Hamilton* and other authorities).

Second, Dewberry didn't forfeit recovery of some "lesser amount" under the just-sum provision.  DG Supp. Br. 19.  For example, Dewberry argued that the district court could use this provision to "adjust an award up or down as circumstances demand," Dewberry FF/COL ¶ 72, and award an amount that furthers "the equitable purposes of the … disgorgement remedy" by imposing "financial consequences" for DG's "willful, bad faith infringement," *id.* ¶ 108.  In doing so, Dewberry did not tie itself exclusively to any specific dollar figure.  Rather, the district court could have awarded a different amount, and it still could now.  At a minimum, Dewberry's argument "fairly put [the district court] on notice as to the substance of the issue." *Sanford*, 52 F.4th at 587.

These are just a few examples of disgorgement arguments that Dewberry preserved.  But again, all forfeiture questions can and should be remanded to the district court.

 **Appellate preservation.**  DG suggests that even if Dewberry preserved certain arguments in the district court, it failed to preserve them on appeal.  *See* DG

Supp. Br. 13.  This argument fails too.  To begin, Dewberry *did* raise the arguments discussed above in the prior appeals.  *E.g.,* Dewberry CA4 Response Br. 59 n.14 (arguing that Dewberry should be entitled to revenues recorded on DG's books); *id.* at 53-56 (arguing that just-sum provision supported the disgorgement award); Fourth Circuit Oral Argument Transcript (Addendum to Respondent's Br.) at 1 (arguing that the affiliates' profits reflected DG's "true profits" or "full profits").[7]

In any event, *Stokes* doesn't require appellees to raise every possible alternative ground for affirmance, as DG suggests.  DG Supp. Br. 13-15 (citing *Stokes v. Stirling*, 64 F.4th 131, 137 (4th Cir. 2023)).  While the *Stokes* majority remarked that appellees are not "immune" from waiver and forfeiture rules, in that courts still "have discretion to enforce [them] against appellees," the exercise of that discretion "'depends on the particular facts of the case.'"  64 F.4th at 138-39 (citation omitted).  And the facts of *Stokes* were materially different from those here.  For example, unlike in this case, it was "anything but clear" that the appellee in *Stokes* had preserved its argument in the district court.  *Id.* at 137.  Furthermore, the *Stokes* appellee didn't just omit that argument on appeal; it also took contradictory positions after having petitioned the Supreme Court and won: "in its response brief, [it] relied heavily" on certain evidence, while later taking the incompatible position that this Court was "prohibited" from even considering that same evidence.  *Id.* at 136-37.

---

[7] *See also, e.g.*, Respondent's Br. 40-47, 52 (making these same arguments).

For those unique reasons, this Court treated the appellee's argument as "abandon[ed.]" *Id*. at 138. Nothing similar happened here.

**II. This Court should reinstate the award of attorney's fees.**

DG's arguments for vacating Dewberry's fee award also fail. DG doesn't challenge Dewberry's *entitlement* to fees, but instead argues only that the *amount* is purportedly undermined by the Supreme Court's vacatur of the district court's profits award. DG Supp. Br. 23-26.

The mandate rule forecloses this argument. Dewberry Supp. Br. 12-15. If DG wanted to challenge this Court's affirmance of Dewberry's fee award, it needed to do so in the Supreme Court along with its attack on the disgorgement award—and it didn't. *Id*. at 14-15.

None of DG's authorities allows deviation from a Supreme Court mandate. DG Supp. Br. 24-25. Indeed, three of them didn't involve a Supreme Court mandate at all. Rather, the appellate court vacated a fee award while also *itself* reversing a predicate merits ruling in the same order. *Fawcett v. McRoberts*, 326 F.3d 491, 501 & n.6 (4th Cir. 2003); *RSBCO v. United States*, 104 F.4th 551, 562 (5th Cir. 2024); *Long v. Coast Resorts, Inc.*, 267 F.3d 918, 925 (9th Cir. 2001). That's not what DG requests here, which is for this Court to vacate a fee award on *remand*, after the Supreme Court's mandate, despite having never asked that Court for such relief. It is one thing for an appellate court to grant more relief than *it* has been asked to

provide.  But it is something else entirely—and prohibited by the mandate rule—for an appellate court to grant more relief than the *Supreme Court* was asked to provide. *See Invention Submission Corp. v. Dudas*, 413 F.3d 411, 414 (4th Cir. 2005). Further, in DG's authorities the rulings reversed had supported *entitlement* to a fee award.  Here, it is undisputed that Dewberry's entitlement to fees remains law of the case.

DG's last case, *Chafin v. Chafin*, 568 U.S. 165, 177 (2013), is equally inapposite.  DG Supp. Br. 24.  In remarking that vacatur of fee awards is "common relief on appeal," *Chafin* was referring to *Fawcett*—which, as noted above, didn't involve a mandate from the Supreme Court.  568 U.S. at 177.  And *Chafin* nowhere suggests that a circuit court could vacate a fee award that wasn't encompassed by such a mandate.  If anything, *Chafin* confirms that some Supreme Court mandates *do* expressly encompass fee awards that some other ruling has undermined.  *Id.* ("It is thus for lower courts … to decide whether Mr. Chafin is in fact entitled to … vacatur of the expense orders.").  The mandate here did not.  Moreover, unlike DG, the defendant in *Chafin* argued to the Supreme Court that reversal on the merits would require reversal of the fee award as well.  568 U.S. at 176-77 ("Mr. Chafin also seeks, if he prevails, vacatur of the District Court's expense orders ….").

Finally, DG's Wright and Miller citation is likewise unhelpful.  DG Supp. Br. 24.  Notably, it explains that, consistent with the mandate rule, a prior fee judgment

can be disturbed only when "a proper appeal from the final [fee] award" has been taken. 15B Wright & Miller, *Federal Practice & Procedure* § 3915.6 (2d ed. Apr. 2025 update). Again, DG didn't do that.

Indeed, Wright and Miller confirms that DG's only possible recourse lies in the district court: "[i]f no appeal was taken from the [fee] award," then the only remaining vehicle for relief is a motion in the district court "under Civil Rule 60(b)(5)." *Id.* Such motion cannot be filed in this Court, but only in the district court, which has the "superior position for evaluating the merits," including any forfeiture by DG (with any subsequent review by this Court "deferential"). *United States v. McRae*, 793 F.3d 392, 401 (4th Cir. 2015).

Further, DG's argument will ultimately fail. Dewberry's entitlement to fees is undisputed, and because Dewberry also "prevailed on each of its claims, defeated [DG's] counterclaims, and won … the permanent injunction," JA4428, the amount of fees awarded remains well within the district court's sound discretion, whatever the ultimate amount of disgorgement. And regardless, the new disgorgement award could be just as high as before. *See,* pp. 9-10, *supra*.

## CONCLUSION

The Court should reinstate all aspects of its original judgment listed in Dewberry's Supplemental Brief (at 19), and remand to the district court "for a new award proceeding" on a profits award for DG's infringement, *Dewberry II*, 145 S.

14

Ct. at 688, allowing the district court to determine in the first instance the appropriate

grounds and arguments for a new profits award.


    Dated:  June 18, 2025                Respectfully submitted,


                                             */s/    Elbert Lin*

| | |
|---|---|
| Noel J. Francisco | Elbert Lin |
| Jennifer L. Swize | Stephen P. Demm |
| Brett J. Wierenga | David M. Parker |
| JONES DAY | David N. Goldman |
| 51 Louisiana Avenue, N.W. | HUNTON ANDREWS KURTH LLP |
| Washington, DC 20001-2113 | Riverfront Plaza, East Tower |
| 202-879-3939 | 951 East Byrd Street |
| *njfrancisco@jonesday.com* | Richmond, VA 23219-4074 |
| *jswize@jonesday.com* | 804-788-8200 |
| *bwierenga@jonesday.com* | *elin@hunton.com* |
| | *sdemm@hunton.com* |
| | *dparker@hunton.com* |
| | *dgoldman@hunton.com* |

                                            Arthur E. Schmalz
                                            HUNTON ANDREWS KURTH LLP
                                            2200 Pennsylvania Ave. NW,
                                            Washington, DC 20037
                                            202-955-1500
                                            *aschmalz@hunton.com*


                                            *Attorneys for Plaintiff-Appellee Dewberry Engineers Inc.*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing complies with the type-volume limitation of this Court's April 4, 2025 Order because it contains 3,464 words, excluding the parts exempted by Fed. R. App. P. 32(f). I also certify that the foregoing complies with the requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in 14-point Times New Roman font, using Microsoft Word.

*/s/ Elbert Lin*
Elbert Lin

**CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2025, I electronically filed the foregoing with the Clerk of Court through the Court's CM/ECF system. The participants in the case are registered CM/ECF users, and service will be accomplished through the CM/ECF system.

*/s/ Elbert Lin*
Elbert Lin